## USAA COUNTY MUTUAL INSURANCE COMPANY, Appellant,

v.

## Hayden P. COOK, Appellee.

### No. 01-06-00824-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 16, 2007.

---

Brock C. Akers, Evelyn Ailts Derrington, Neal David Kieval, Phillips & Akers, P.C., Houston, TX, for Appellant.

B. Thomas Cook, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

Appellant, USAA County Mutual Insurance Company ("USAA"), challenges the trial court's judgment entered, after a jury trial, in favor of appellee, Hayden P. Cook, in Cook's suit for breach of contract, breach of the duty of good faith and fair dealing, violation of articles 21.21 and 21.55 of the Texas Insurance Code,[1] and attorney's fees. USAA brings nine issues for our review. It contends that the trial court erred in denying its motion for directed verdict and, alternatively, its motion for judgment notwithstanding the verdict, "based on Mr. Cook's judicial admissions and the terms of the insurance policy" as "the accident was caused by a collision, a coverage not purchased by Mr. Cook"; the evidence is legally and factually insufficient to support the jury's finding that "the accident was the result of vandalism"; the trial court erred in admitting evidence of vandalism; and, because "no coverage was owed and no breach of contract established, all of Mr. Cook's extra-contractual claims and claims for attorney's fees fail as a matter of law." USAA also contends that the evidence is legally and factually insufficient to support the jury's finding that USAA breached its extra-contractual duties to Cook "under the Texas Insurance Code or the common law for breach of the duty of good faith and fair dealing"; the jury's findings that "USAA's failure to comply with the insurance policy and its duty of good faith and fair dealing, respectively, were not excused, are wholly unsupported by the great weight of the evidence"; and the evidence is factually insufficient to support the jury's award of attorney's fees.

We affirm.

## Factual and Procedural Background

At trial, Cook testified that after purchasing his 1998 Volkswagon Jetta in June 2004, he called USAA and purchased an insurance policy. The original version of the declarations page of the policy stated that the six-month policy was issued on June 8, 2004. An amended declarations page, dated June 25, 2004, demonstrates that in the interim, Cook dropped several coverages, but reflects that Cook retained coverage under "Part A—Liability" for "Bodily Injury" and "Property Damage" and under "Part D—Damage to Your Auto" for "Other than Coll[ision] Loss." Cook paid $70.55 for a six-month term for "other than collision loss" coverage, with a $200 deductible.

Cook further testified that, while looking for a job in Washington, D.C., he and some friends took a break and he drove them to Atlanta, Georgia, to attend a baseball game. On October 8, 2004, on their way back to Washington, D.C., they stopped for lunch at a restaurant in Fayetteville, North Carolina, and Cook parallel parked

---

1. See TEX. INS.CODE ANN. arts. 21.21, 21.55, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 TEX. GEN. LAWS 3611, 4138 (current version at TEX. INS.CODE ANN. §§ 541.001 et seq., 542.001 et seq. (Vernon Supp.2006)).

his car approximately two feet from the rear of a very large sports utility vehicle ("SUV"). Cook and his friends then went into the restaurant and, about forty-five minutes later, they returned to find that Cook's car had been damaged. The hood was "bent up," there was damage to the grill, and the car had been pushed back fifteen feet, no longer in the parking spot where Cook had originally parked it. When he initially parallel parked his car, Cook put the transmission in park. The large SUV in the space immediately in front of his car faced the same direction, and another car was parked right in front of the SUV. Cook explained that the parking lot layout was extremely confined. On one side of the parked cars, there was a three-inch curb with grass, trees, and bushes. When Cook returned to his car, he found that the transmission to his car remained in park, but the car had still been moved back fifteen feet, roughly a full car length. The impact to the hood of the car showed that it was a "direct head-on collision" and not from the side. Only the front grill and hood of the car were damaged. The SUV previously parked in front of Cook's car was no longer there, but there was still a car in the space in front of where the SUV had been parked. A black mark on the top portion of the bumper of Cook's car indicated that the mark was made from a vehicle with a taller bumper, such as the SUV.

After Cook and his friends took note of the damage, they asked around for witnesses, but no one saw what caused the damage. The group of friends noticed video surveillance cameras near the restaurant, but learned that the cameras were only decoys. They called the local police department and, at the scene, told an officer what happened and that there were no witnesses to the incident.

After returning to Washington, D.C., Cook read his insurance policy. Part D of the policy states,

A. We will pay for direct and accidental loss to **your covered auto,** including its equipment less any applicable deduction shown in the Declarations. However, we will pay for loss caused by **collision** only if the Declarations indicate that Collision Coverage is provided.

B. **"Collision"** means the upset, or **collision** with another object of **your covered auto.** However, loss caused by the following are not considered **"collision":**

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a collision or if loss is caused by contact with a bird or animal, you may elect to have it considered a loss caused by **collision.**

The policy does not define the term "vandalism."

Based on his reading of the policy, Cook thought that the damage to his car was caused by "vandalism," and, on October 21, 2004, Cook called USAA to make a claim under the policy. Cook took his car to be inspected by Larry O'Hara, whom USAA had requested, and he estimated that it would cost $2,126.56 to repair the damage. USAA subsequently denied Cook's claim for damages on the ground that the damage to his automobile was not covered by the policy.

Tracy Huggins, a claims adjuster for USAA, testified that USAA denied the claim because "it was a collision loss and unfortunately, there was no collision coverage on the policy for this loss." Huggins explained that she tried to get all of the information available. In her view, Cook only told her the facts that he wanted her to know. For example, Cook did not tell her whether there were any passengers present in his car. Huggins noted that although most people call in their claim within one or two days of an incident, Cook waited approximately two weeks to report his claim.

Huggins further testified that Cook reported the loss as "vandalism" and that "vandalism is covered under comprehensive coverage." In her conversation with Cook, his "main point was that because the car was moved back 15 feet, it was obviously struck in a willful, intentional way." When Huggins asked Cook what caused the damage to the car, he told her, "I don't know." Huggins put Cook "on notice that [because] he didn't carry collision coverage on the policy, it didn't look like we were going to be able to issue payment for his damage." Cook "understood there was no collision [coverage] but he persisted on having it covered under comprehensive."

At the conclusion of the trial, the jury found that USAA failed to comply with the insurance policy, found that the failure to comply with the policy was not excused, and awarded actual damages to Cook in the amount of $1,926.56. The jury also found that USAA failed to comply with its duty of good faith and fair dealing, found that the failure to comply with the duty of good faith and fair dealing was not excused, and awarded damages of $1,926.56. The jury further found that USAA engaged in unfair and deceptive acts or practices and awarded damages of $1,926.56, but found that USAA did not engage in

such conduct knowingly. Finally, the jury awarded reasonable and necessary attorney's fees to Cook in the amount of $23,310 for preparation and trial, $15,000 for an appeal to the Texas Courts of Appeals, and $15,000 for an appeal to the Texas Supreme Court. The trial court entered judgment awarding Cook $1,926.56 plus pre-judgment and post-judgment interest, and the attorney's fees.

## Legal and Factual Sufficiency

In its first issue, USAA argues that the trial court erred in denying its motion for directed verdict and, alternatively, its motion for judgment notwithstanding the verdict, "based on Mr. Cook's judicial admissions and the terms of the insurance policy because the accident was caused by a collision, a coverage not purchased by Mr. Cook." In its third and fourth issues, USAA argues that the evidence is legally and factually insufficient to support the jury's finding that the damage to Cook's car was caused by vandalism and that USAA breached its policy because at most, "Cook offered evidence that his car was damaged and pushed back fifteen feet." In its eighth issue, USAA argues that the jury's finding that USAA was not excused from complying with the policy "based on Mr. Cook's conduct" is against the great weight and preponderance of the evidence.

### Standard of Review

We will sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005). In conducting a legal suf-

ficiency review of the evidence, a court must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.* However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.*

Our review of the factual sufficiency of the evidence requires us to consider, weigh, and examine all of the evidence that supports or contradicts the jury's determination. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We may set aside the verdict only if the evidence that supports the jury's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### Terms of the Policy

■ In its first issue, USAA contends that this case should have been "resolved on the policy coverages Mr. Cook, himself chose to purchase," asserting that in his answers to requests for admission, and at trial, Cook admitted that the damage was the result of a "collision" and that the policy issued by USAA did not provide collision coverage.

As noted above, the amended declarations page of the policy provides that Cook purchased coverage under "Part A—Liability" for "Bodily Injury" and "Property Damage." Cook also purchased coverage under "Part D—Damage to Your Auto" for "Other than Coll[ision] Loss,", which contained a $200 deductible. Although the policy provides that USAA "will pay for direct and accidental loss to your covered auto, including its equipment less any applicable deduction shown in the Declarations," the policy does not further describe or define what constitutes an "other than collision loss."

In its briefing, USAA asserts that Cook could "treat the loss as either a collision or non-collision loss" only "if the loss resulted from damages caused by a bird or animal" and that the policy "did not permit an insured to treat vandalism as either vandalism or collision." USAA argues that "the policy, as a matter of law, quite simply said that vandalism was not a covered collision loss" and, if interpreted otherwise, "coverage would equally be owed for collisions involving missiles, falling objects, explosion, flood, or riot." USAA further argues that such an "interpretation of the insurance policy is patently absurd." In other words, the ten listed items, including vandalism, "were exclusions to collision coverage not grants of coverage." However, at oral argument, USAA abandoned this argument and conceded that a loss caused by vandalism would in fact be covered under Cook's policy. USAA also agreed that one could use a car to intentionally collide with another car to cause damage, resulting in an act of vandalism.

Cook did testify that he believed that the damage to his car was the result of a large SUV "colliding" with the front-end of his car. However, our examination of the insurance policy in question does not reveal that the terms "collision" and "vandalism" are mutually exclusive. It is undisputed that Cook did not purchase "collision" coverage, which the policy defines as "the upset, or collision with another object of your covered auto." However, the policy specifically provides that loss caused by "malicious mischief or vandalism" is not considered a "collision."

In its charge, the trial court instructed the jury that "vandalism" means "the willful or malicious destruction of public or private property" and that "malice" means "the intent, with or without cause, or reason, to commit an unlawful act that will result in injury to another or others." "Vandalism" is commonly defined as an "action involving deliberate destruction of or damage to public or private property." THE NEW OXFORD AMERICAN DICTIONARY 1868 (1st ed.2001). "Collision" is defined as "an instance of one moving object or person striking violently against another." *Id.* at 336. In most instances, acts of vandalism involve causing an object, be it a baseball bat or a car, to collide with another object to deliberately cause damage. Thus, the real issue here is whether the damage to Cook's car was caused by a deliberate as opposed to a negligent act.

As discussed more fully below, Cook presented evidence that the damage caused to his car was the result of a willful or malicious act, not a negligent act. Accordingly, we hold that Cook's "judicial admissions and the terms of the insurance policy" do not establish, as a matter of law, that the damage to Cook's car resulted from a non-covered "collision" and not from "vandalism."

We overrule USAA's first issue.

### Result of "Vandalism"

In its third and fourth issues, in support of its argument that the evidence is legally and factually insufficient to support the jury's finding that the damage to Cook's car was the result of vandalism, USAA asserts that Cook "could not confirm that the SUV he originally saw caused the collision, or that the car originally parked in front of the SUV was the same" and that the "police reported it as a hit and run." It also asserts that Cook's "evidence consisted o[f] his lone surmise, and a remarkably unreasonable surmise, that a

person in a large, and presumably expensive, SUV, would intentionally ram his vehicle into [Cook's] Jetta for fun or sport." USAA also argues that because the "competing inferences" of a negligent hit-and-run and an act of intentional vandalism are "equal inferences," the jury's finding that USAA failed to comply with the insurance policy cannot survive a sufficiency challenge.

USAA directs our attention to *Rich v. United Mutual Fire Insurance Company* as persuasive authority. *See* 328 Mass. 133, 102 N.E.2d 431 (Mass.1951). In *Rich,* evidence was presented that the insured parked his automobile in front of his house with the automobile headed downgrade, its left front wheel turned up against the curb, and the emergency break activated. *Id.* at 432. Approximately two and one-half hours later, the insured heard a door slam and was told by a young boy that the automobile was at the bottom of the hill smashed against a tree. *Id.* The automobile was found in a damaged condition down the hill with the brake activated, against a tree, approximately three-hundred feet from where it had been parked. *Id.* The insured's policy provided that the insurer agreed to pay for loss of or damage to the automobile "except loss caused by collision of the automobile with another object." *Id.* The policy also provided that "loss caused by ... theft ... [or] vandalism ... shall not be deemed loss caused by collision." *Id.*

After stating that the terms "theft" and "vandalism" were to be given the meaning attributed to them in common use, the court opined that vandalism, as used in the policy in question, referred to "such wanton and malicious acts as are intended to damage or destroy the property insured." *Id.* The court held that the evidence would not warrant a finding by the jury that the insured's automobile collided with the tree

by reason of either theft or vandalism. *Id.* The court reasoned that "[i]t could be found that the automobile had been caused to move from its position by reason of human intervention," but "there was no greater probability that the force which caused the automobile to move was applied intentionally by a thief of [sic] vandal than, for example, by some negligent act of the operator of another automobile or the act of a child in play." *Id.* Thus, the cause of the damage to the automobile would be a "matter of speculation, conjecture, and surmise." *Id.*

Here, although there were no eyewitnesses to the incident in question, Cook presented evidence that upon entering the restaurant, he left the transmission in park; a large SUV was parallel parked approximately two feet in front of Cook's car, with the SUV's rear bumper facing Cook's front bumper; another car was parallel parked immediately in front of the SUV; and the parking lot was very confined. After returning to his car approximately forty-five minutes later, Cook observed that his car was moved fifteen feet from where he initially parked the car; the transmission was still in park; the front grill and hood of Cook's car were damaged, a black mark was above Cook's front bumper, a piece of plastic debris from Cook's car was on the ground; and the damage to Cook's car appeared to have resulted from a "head-on" impact. Also, Larry O'Hara, the USAA appraiser, told Cook that he did not feel that the damage to Cook's car was "accidental."

In the instant case, in contrast to *Rich*, the jury could have reasonably concluded that, based on the dimensions of the parking lot, the driver of the SUV parallel parked immediately in front of Cook's car willfully or maliciously caused the damage to Cook's car by ramming the SUV into the car. Given the fact that Cook's car, with the parking brake activated, was physically moved approximately fifteen feet, no other conclusion appears reasonable. This evidence does not reveal "a single vehicular collision" that was the result of negligence, as USAA contends, but rather a deliberate act akin to road rage. As such, the occurrence of mere negligence or accident cannot be equally inferred. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's implied finding that the damage to Cook's car was the result of vandalism and its express finding that USAA failed to comply with the insurance policy.

We overrule USAA's third and fourth issues.

### Excuse from Performance

■ In its eighth issue, USAA asserts that, under the policy, Cook owed a duty to cooperate with USAA by promptly notifying USAA of how the incident occurred and the names and addresses of any witnesses. USAA contends that Cook breached this duty to cooperate by (1) concealing or otherwise making false representations "to USAA in reporting his claim by never once mentioning the accident was the result of a collision" and (2) not identifying "any of the men with him as potential witnesses until his deposition was taken in this litigation, long after his [claim] was denied."

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

■ It is a fundamental principle of contract law that when one party to a contract commits a material breach of that

contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex.2004). However, an insured's actions will not operate to discharge the insurer's obligations under the policy unless the insurer is actually prejudiced or deprived of a valid defense by the actions of the insured. *See McGuire v. Commercial Union Ins. Co. of New York*, 431 S.W.2d 347, 353 (Tex.1968).

Here, in a conclusory sentence, USAA alleges that it "was prejudiced by Mr. Cook's breach." However, there is no evidence in the record and USAA provides no guidance to this Court as to how it detrimentally relied on any alleged misrepresentations made by Cook. In fact, this Court has held that there is legally and factually sufficient evidence to support the jury's implied finding of "vandalism." Accordingly, we hold that the jury's finding that USAA was not excused based on Cook's conduct is not against the great weight and preponderance of the evidence.

We overrule USAA's eighth issue.

### Erroneous Admission of Evidence

■ In its second issue, USAA argues that, "based on Mr. Cook's judicial admissions," the trial court erred in admitting evidence of vandalism. In response, Cook asserts that "evidence of vandalism came in at trial without objection."

■ Requests for admissions are governed by rule 198 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 198. In a pending action, a "matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." Tex.R. Civ. P. 198.3. An admission once admitted,

deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex.1989). However, a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. *Id.; Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex.1983). A party waives the right to rely upon an opponent's admissions unless objection is made to the introduction of evidence contrary to those admissions. *Marshall*, 767 S.W.2d at 700.

Here, USAA did not object to Cook's repeated testimony that the damage to his car was the result of an act of "vandalism." Thus, USAA has waived its right to rely upon any admissions which were controverted by testimony admitted at trial without objection. *See id.; Musick*, 650 S.W.2d at 768–69.

We overrule USAA's second issue.

### Attorney's Fees

■ In its ninth issue, USAA argues that the jury's award of trial and appellate attorney's fees in the amount of $23,310 and $30,000,[2] respectively, is excessive because there is factually insufficient evidence that such fees were reasonable or necessary.

■ Factors that a factfinder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

---

**2.** The jury awarded $15,000 contingent on an appeal to the Texas Courts of Appeals, and another $15,000 contingent on an appeal to the Texas Supreme Court.

(3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof'l Conduct 1.04). Attorney's fees must bear some reasonable relationship to the amount in controversy. *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 448 (Tex.App.-El Paso 2004, no pet.). But, the amount of damages awarded is only one factor in determining the reasonableness of a fee award. *Id.*

At trial, in regard to attorney's fees, Tom Cook ("the senior Cook"), Hayden Cook's attorney and father, testified that he moved to Houston in 1974 after graduating from law school at the University of Texas and is licensed to practice law in all state and federal courts in Texas. At the time of trial, he was retired, but formerly was a partner at the law firm of Bracewell & Giuliani, where he practiced civil litigation for twenty-nine years. The senior Cook's time log reflected that he spent 127.4 hours working on the case prior to trial. He estimated, based on a three-day trial and the time associated with post-trial motions and hearings through the entry of final judgment, twenty-eight hours for trial, but instructed the jury that he now felt the trial would only take two days to complete, and therefore the jury should subtract eight hours from the original twenty-eight hour estimate. The senior Cook testified that for a case of this size, a reasonable rate was $150 per hour, as opposed to the $400 per hour rate he charged at his former law firm. In addition, he estimated the reasonable and necessary attorney's fees for him to handle an appeal to the Texas Courts of Appeals at $15,000, and another $15,000 should the case be appealed to the Texas Supreme Court. He also spent one hour, not reflected in his time log, comparing Cook's policy to the language quoted by Tracy Huggins in her letter denying coverage. The senior Cook further testified that "[m]ost of the time was spent responding to motions that [USAA] filed with this Judge and [he] had to answer all those various motions for summary judgment that were all denied."

Here, Cook's attorney testified that he calculated his fees based upon a rate of $150 per hour. Additionally, much of his time was spent preparing and responding to requests for admissions and interrogatories, two depositions, USAA's motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial. Although USAA argues that the aggregate amount of attorney's fees sought is excessive, it presented no evidence that a rate of $150 per hour for a Houston trial attorney is unreasonable. Mindful that the case involved approximately a $2,000 claim under the policy and the amount awarded for attorney's fees greatly exceeds the amount of actual damages, we cannot say, given the amount of time invested in the case by Cook's attorney, that the attorney's fees awarded are excessive or unreasonable. Accordingly, we hold that the evidence is factually sufficient to support the jury's award of trial and appellate attorney's fees.

We overrule USAA's ninth issue.

### Extra–Contractual Claims

In its fifth, sixth, and seventh issues, USAA argues that because no coverage

was owed to Cook, all of his "extra-contractual claims and claims for attorney's fees fail as a matter of law" and that the evidence is legally and factually insufficient to support the jury's finding "that USAA breached extra-contractual duties to Mr. Cook under the Texas Insurance Code or the common law for the breach of the duty of good faith and fair dealing." However, the jury did not award Cook any damages above and beyond his actual damages of $1,926.56 for USAA's denial of his insurance claim. Having held that the evidence is legally and factually sufficient to support the jury's finding that USAA failed to comply with the insurance policy, factually sufficient to support the jury's finding that USAA's failure to comply was not excused, and factually sufficient to support its award of attorney's fees, we need not reach USAA's fifth, sixth, and seventh issues.

### Conclusion

We affirm the judgment of the trial court.