WAL–MART STORES,
INC., Petitioner,

v.

Charles T. MERRELL, Sr., as Wrongful Death Beneficiary of Charles Thomas Merrell, II, Deceased, and as Representative of the Estate of Charles Thomas Merrell, II and Jane Ceverny, as Wrongful Death Beneficiary of Charles Thomas Merrell II, Deceased, Respondents.

No. 09–0224.

Supreme Court of Texas.

June 18, 2010.

Douglas W. Alexander, Susan S. Vance, Alexander Dubose & Townsend LLP, Austin, Jeffrey Cox, Edward Andrew Davis, Hartline, Daucus, Barger, Dreyer, Kern, L.L.P., Dallas, for Petitioner.

Gary D. Corley, Gary D. Corley, P.C., Sherman, Robert Lee Galloway, South Texas College of Law, Houston, for Respondents.

PER CURIAM.

Charles Merrell, Jr., ("Charlie") and Latosha Gibson died from smoke inhalation in the bedroom of their rented home.

When police officers arrived, they found in the living room a badly burned recliner, a damaged pole-style floor lamp, and other furniture covered in soot and smoke. There were candles, melted wax, an ashtray, and a "blunt"[1] on the table next to the recliner, as well as smoking paraphernalia throughout the house, including ashtrays, a bong,[2] and marijuana cigarette butts. Two photographs were taken of the scene. The fire marshal declared the fire accidental and of unknown origin. The property owner discarded the burnt household items after authorities concluded their investigation.[3]

The parents of Charlie Merrell, Jane Ceverny and Charles Merrell, Sr., ("Merrell") brought wrongful death and survival claims against Wal–Mart, alleging that a halogen lamp in the apartment, purchased from Wal–Mart, caused the fire. Charles Merrell, Sr., testified that he bought the lamp at Wal–Mart for his son, but could not produce a receipt.

Merrell's expert, Dr. Craig Beyler, attributed the fire to " 'nonpassive failure' of the lamp igniting the recliner below." He opined that the lamp's halogen bulb exploded, sending burning glass shards onto the recliner, which smoldered for several hours. According to Beyler, "[o]ther possible mechanisms [causing the fire] are dropping combustible ceiling material onto the wok and tipping of the lamp by joint failure." Beyler ruled out smoking materials as the cause because none were found in the immediate "area of origin." He noted that "the mere fact that occupants may be smokers and may have smoked somewhere during the hours before the fire does not provide data relevant to the investigation of causes available in the area of origin." He also discounted candles as the cause of the fire because, had the candles been the source of ignition, the candle wax on the table would not have survived the exposure. Beyler concluded that nonpassive failure of the lamp was "consistent with the facts of this case and . . . wholly consistent with our knowledge of fire science."

Wal–Mart's expert, John Lentini, testified that "[t]he more likely cause of this fire was careless disposal of smoking materials." Wal–Mart moved for summary judgment, asserting, among other things, that there was no evidence of any element of Merrell's causes of action, no evidence that the pole-style floor lamp was a halogen lamp[4] (as opposed to an incandescent

1. The police officer who initially took photographs of the scene to determine whether a crime had been committed testified that "[w]e found quite a bit of paraphernalia. . . . We found several little joints, we found several little smoking pipes and a bong." In describing the "little joints," he refers to them as "blunts": "a blunt is like the butt of a cigarette," in which there is "just enough to hold on to to get a hit off of and then lay it down." He further testified that "some of those" were found in the living room.

2. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 515 n. 1, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) ("A 'bong' is a 'water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances.' " (quoting AMERICAN HERITAGE DICTIONARY 215 (3d ed. 1992))).

3. In an attempt to recover the lamp from the scene of the fire, Charles Merrell, Sr. offered a $500 reward to anyone who could locate it. A man came forward with a burnt pole-style lamp, on which Merrell's original expert relied to draw conclusions about the cause of the fire. When Wal–Mart's expert found traces of gasoline on the lamp, however, the man confessed that he had acquired an undamaged halogen lamp, burned it, and gave it to Merrell in exchange for the reward. Merrell dismissed the expert, and the lamp was excluded from evidence.

4. Richard Dyer, an expert for Wal–Mart, testified that the "cone shaped component" visible

one), and no evidence that it was ever purchased at Wal–Mart.

Overruling Wal–Mart's objection, the trial court admitted Dr. Beyler's expert testimony but granted Wal–Mart's motion for summary judgment. The court of appeals reversed, holding that Merrell produced evidence on each challenged element of their cause of action. 276 S.W.3d 117, 137–38. Wal–Mart sought review here asserting that there was no evidence that the lamp was defective or that it caused the fire. 52 Tex.Sup.Ct.J. 445, 449 (2009).

 Wal–Mart contends that even if Beyler's testimony was properly admitted, it constitutes no evidence of defect or causation because his opinion lacks factual substantiation and is therefore conclusory. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231–32 (Tex.2004). Specifically, Wal–Mart contends that Beyler's testimony constitutes no evidence that the lamp was more likely to have caused the fire than any other obvious potential sources. No-evidence challenges to allegedly conclusory expert testimony require us to examine the record on its face to determine whether the evidence lacks probative value. *Id.* at 233. In *Coastal Transportation*, we explained that "[o]pinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Id.* at 232 (quoting TEX R. EVID. 401). "[S]uch conclusory statements cannot support a judgment even when no objection was made to the statements at trial." *Id.*

Applying the *Coastal* analysis to a case involving a car accident, we held that an expert's testimony that failed to account for the sequence of events was legally insufficient to support a jury verdict. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 910–12 (Tex.2004). In that case, the expert provided some evidence for his theory that a defect in the vehicle's wheel caused the crash, but he neglected to account for inconsistencies raised by this theory, thereby nullifying the probative value of his testimony. *Id.* at 910 ("[The expert] was offered to prove that a defect in a metal bearing caused the left rear wheel assembly to separate from the axle ... [, however, he] does not explain how the left rear wheel remained floating directly underneath the stub axle, from which it had allegedly detached, through the accident sequence.").

Similarly, Dr. Beyler did not say why a burning cigarette could not have caused the fire. He dismissed as irrelevant the fact that post-mortem toxicology reports revealed that Charlie Merrell and Latosha Gibson had been smoking the very night of the fire because, according to Beyler, that evidence "d[id] not provide data relevant to the investigation of causes available in the area of origin." If, by "area of origin" Beyler was referring to the recliner itself, he failed to address how he ruled out smoking materials on the basis of not having found evidence of burnt cigarettes there, when there was likewise no evidence of charred or exploded glass (either in the recliner or anywhere else in the house) to support his own theory. *See Ramirez*, 159 S.W.3d at 911 (describing the basis of the challenged expert's "limited opinion on causation" as equally consistent with the opposing expert's conclusion, and therefore non-probative).

 Beyler did undertake to eliminate one potential cause of the fire that might

---

in the photograph of the lamp taken by police officers "appeared to be where an incandescent bulb would have been inserted into the lamp," and therefore "indicated that this lamp was not a halogen unit."

otherwise seem on a par with the lamp theory. He explained why the melted candle wax and location of the candles precluded the candles as the source of the fire (pointing to the melted pool of wax on the table, which could not have survived the fire exposure if the candles themselves had ignited the fire). Yet he provided no explanation for why lit smoking materials could not have been the source. An expert's failure to explain or adequately disprove alternative theories of causation makes his or her own theory speculative and conclusory. *See Gen. Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470 (Tex.2005) ("[The expert] eliminated the obvious possibility that fuel or vapors from the tank filler neck ignited only by saying so, offering no other basis for his opinion. Such a bare opinion was not enough.").

Most importantly, while Beyler laid a general foundation for the dangers of halogen lamps, his specific causation theory amounted to little more than speculation. Evidence that halogen lamps can cause fires generally (assuming that the lamp here was a halogen lamp) does not establish that the lamp in question caused *this* fire. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 819 (Tex.2009) (finding evidence that chemical exposure in high amounts can cause chromosomal anomalies is insufficient proof that exposure to 1/60th of the same amount of chemicals caused plaintiff's chromosomal anomalies).

Dr. Beyler may be qualified in fire research, but his testimony in this case lacks objective, evidence-based support for its conclusions. *See Coastal*, 136 S.W.3d at 232 (" '[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.' " (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999))).

Because Beyler's testimony was legally insufficient to support causation, we do not reach Wal–Mart's remaining issues. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 643 (Tex.2009).

Without hearing oral argument, we reverse the court of appeals' judgment and render judgment that Merrell take nothing. TEX.R.APP. P. 60.2(c).

Justice GREEN did not participate in the decision.