ACCEPTED
14-15-00093-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/7/2015 4:14:26 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-15-00093-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/7/2015 4:14:26 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS
HOUSTON, TEXAS

**STATE FARM LLOYDS,**
*Appellant*

**v.**

**GINGER HANSON,**
*Appellee*

On Appeal from Cause No. 2012-68087
In the 281st Judicial District Court
Harris County, Texas

## APPELLANT STATE FARM LLOYDS' REPLY BRIEF

Bruce E. Ramage
State Bar No. 5492500
*ramage@mdjwlaw.com*
Kevin G. Cain
State Bar No. 24012371
*cain@mdjwlaw.com*
Levon G. Hovnatanian
State Bar No. 10059825
*hovnatanian@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS.............................................................................................i

INDEX OF AUTHORITIES................................................................................... iii

I.    HANSON FAILS TO IDENTIFY ANY EVIDENCE THAT THE SHINGLES WERE IN A SATISFACTORY STATE BEFORE THE STORM..................................................................................................1

II.   HANSON FAILS TO IDENTIFY ANY PROBATIVE EVIDENCE THAT THE WIND CAUSED DAMAGE TO THE SHINGLES..................1

III.  HANSON FAILS TO IDENTIFY EVIDENCE SHOWING THAT THE SHINGLES CHANGED FROM A SATISFACTORY STATE TO AN UNSATISFACTORY STATE ON JUNE 1, 2012. .........................3

IV.  FREEMAN DID NOT RULE OUT OVERDRIVEN STAPLES AS THE CAUSE OF THE PULL THROUGH DAMAGE. ................................3

V.   HANSON HAS NOT SHOWN SHE WAS EXCUSED FROM SATISFYING THE POLICY'S CONDITION PRECEDENT REQUIRING HER TO REPAIR THE SUPPOSED DAMAGE IN ORDER TO BE ENTITLED TO REPLACEMENT COST BENEFITS....................................................................................................4

VI.  HANSON FAILS TO IDENTIFY SUFFICIENT EVIDENCE TO ESTABLISH THAT SHE SEGREGATED THE CLAIMED ATTORNEY'S FEES.........................................................................................5

VII  HANSON HAS FAILED TO SHOW THAT RULE 167 DOES NOT PRECLUDE HER RECOVERY OF DAMAGES AND ATTORNEY'S FEES THAT ACCRUED AFTER DECEMBER 4, 2013. ...........................................................................................................6

VIII. HANSON FAILS TO SHOW THAT SHE PROPERLY SEGREGATED RECOVERABLE ATTORNEY'S FEES FROM THOSE THAT ARE NOT RECOVERABLE. .............................................8

IX.  HANSON HAS FAILED TO SHOW THAT THE ATTORNEY'S FEE AWARD IS NOT EXCESSIVE.......................................................10

i

CONCLUSION ........................................................................................13

CERTIFICATE OF COMPLIANCE ......................................................13

CERTIFICATE OF SERVICE ...............................................................14

# INDEX OF AUTHORITIES

**PAGE**

**Cases**

*Alief Indep. Sch. Dist. v. Perry*,
 440 S.W.3d 228 (Tex. App.—Houston [14th Dist.] 2013,
 pet. denied) ...................................................................................................9

*Ashford Partners, Ltd. v. ECO Res., Inc.*,
 401 S.W.3d 35 (Tex. 2012)...........................................................................7

*Brasel v. Manhattan Homeowners Ass'n*,
 2014 WL 2809816 (Tex. App.—Houston [1st Dist.] 2014,
 no pet.)........................................................................................................12

*Citizens Nat'l Bank v. NXS Constr., Inc.*,
 387 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2012,
 no pet.)....................................................................................................8, 10

*El Apple I, Ltd. v. Olivas*,
 370 S.W.3d 757 (Tex. 2012).........................................................................6

*Farmers Group Ins., Inc. v. Poteet*,
 434 S.W.3d 316 (Tex. App.—Fort Worth 2014,
 pet. denied) ...........................................................................................10, 12

*Farrar v. Hobby*,
 506 U.S. 103 (1992) ....................................................................................11

*Flagship Hotel, Ltd. v. City of Galveston*,
 117 S.W.3d 552 (Tex. App.—Texarkana 2003,
 pet. denied) ...................................................................................................9

*Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*,
 739 S.W.2d 622 (Tex. App.—Dallas 1987,
 writ denied)..................................................................................................12

*Long v. Griffin*,
 442 S.W.3d 253 (Tex. 2014).........................................................................6

*Saitchick v. American Motorists Ins. Co.*,
   554 F.Supp. 209 (S.D. N.Y.)................................................................4, 5

*Schenck v. Ebby Halliday Real Estate, Inc.*,
   803 S.W.2d 361 (Tex. App.—Fort Worth 1990,
   no writ) ..................................................................................................10

*Smith v. Patrick W.Y. Tam Trust*,
   296 S.W.3d 545 (Tex. 2009) ....................................................................11

*Stewart Title Guar. Co. v. Aiello*,
   941 S.W.2d 68 (Tex. 1997)........................................................................9

*USAA County Mut. Ins. Co. v. Cook*,
   241 S.W.3d 93 (Tex. App.—Houston [1st Dist.] 2007,
   no pet.)....................................................................................................12

*Wal-Mart Stores, Inc. v. Merrell*,
   313 S.W.3d 837 (Tex. 2010)......................................................................2

*Ware v. United Lloyd's*,
   2013 WL 1932812 (Tex. App.—Beaumont 2013,
   no pet.)...............................................................................................11, 12

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 38.001..................................................................7

**Rules**

TEX. R. CIV P. 167..........................................................................................6

TEX. R. CIV. P. 167(b) ....................................................................................7

TEX. R. CIV. P. 167.4(a) ..................................................................................7

**I.      HANSON FAILS TO IDENTIFY ANY EVIDENCE THAT THE SHINGLES WERE IN A SATISFACTORY STATE BEFORE THE STORM.**

Hanson claims that her testimony that a home inspector "did not find any damage to the home at all that was not cosmetic" establishes that the shingles were in a satisfactory state at the time she purchased the home in 2011. Appellee's Brief at 4. However, nothing shows he climbed onto the roof and inspected the shingles. 3:34-35. She also relies on the seller's disclosure from the 2011 purchase in an attempt to show that the shingles were not damaged. Appellee's Brief at 4. However, as Hanson acknowledges, that shows at best that the seller was simply not aware of any unsealed shingles. Appellee's Brief at 4.

Finally, she contends that an underwriting report that State Farm prepared approximately 11 months before the purported storm "did not reflect any concerns about the roof at all." Appellee's Brief at 4. However, there is no evidence anyone climbed up on the roof to examine the shingles. One cannot determine the presence of unsealed shingles from the ground. 6:71-72. Nor can overdriven staples be seen from the ground. 5:254. The only way to detect them is to lift the corners of shingles and look at the staples. 5:254.

**II.     HANSON FAILS TO IDENTIFY ANY PROBATIVE EVIDENCE THAT THE WIND CAUSED DAMAGE TO THE SHINGLES.**

Hanson cites Kimmel's testimony that the wind lifted unsealed shingles and pulled them through the staples. Appellant's Brief at 6-10. However, Kimmel's

1

conclusions are not probative evidence because they do not exclude construction defects as a cause of the damage.

Kimmel repeatedly states that shingles were pulled through the staples, but never states how he differentiates the damage from that caused by overdriven staples. For example, he states,

> "Now in this exhibit if you see that fastener just pulled with it. The nail came completely out. Okay. And that's not what's happening here. It's actually pulling through the staple. There's a staple on the roof and it's pulled through the staple."

3:178-79. He continued, "In this instance, in her roof, it's pulled through that fastener so it's actually torn right there at the fastener. So it is damage, it's got actual direct physical loss." 3:179. The mere fact that the shingles were unsealed was what Kimmel based his conclusions on: "And the depiction – the shingles are lifting up, just like I told you, so that tells me that these fasteners are pulled . . . ." 3:180. But he never ruled out that the unsealed shingles were torn at the fastener because the staples were overdriven. *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 838 (Tex. 2010). He did not state how he could differentiate between pull through damage and overdriven-staple damage. Nor did he show that unsealed shingles could not have been torn by overdriven staples.

**III. HANSON FAILS TO IDENTIFY EVIDENCE SHOWING THAT THE SHINGLES CHANGED FROM A SATISFACTORY STATE TO AN UNSATISFACTORY STATE ON JUNE 1, 2012.**

Hanson attempts to deflect attention from the lack of evidence showing that the shingles became unsealed on June 1, 2012 by relying on evidence that trees fell over on a golf course. Appellee's Brief at 15. Even if that were evidence of high winds at Hanson's house, it is not evidence that any supposed damage to the shingles occurred that day.

Hanson also relies on evidence that other neighbors were having work performed on their roofs. Appellee's Brief at 16. But nothing shows that those roofs were not in a condition similar to Hanson's. Unsealed shingles are common on roofs over five years old. 5:240. That other roofs in her neighborhood were being worked on is not evidence that wind caused pull through shingle damage or caused the shingles to unseal on June 1, 2012.

**IV. FREEMAN DID NOT RULE OUT OVERDRIVEN STAPLES AS THE CAUSE OF THE PULL THROUGH DAMAGE.**

Hanson contends Freeman ruled out overdriven staples as a cause of damage to the shingles. Appellee's Brief at 12. However, Freeman limited his testimony to only the most severe type of overdriven staple. He considered a staple to be overdriven if it penetrated the plywood decking:

> A. Typically when it's overdriven in my experience it will go down into the decking.

Q. What will?

A. The fastener.

4:11-12.

The undisputed evidence showed that a staple was overdriven if it merely penetrated the top layer of shingles. 5:252. A properly driven staple is flush with the surface of the top layer of shingles. 5:252. The roof had numerous staples that were flush with the top surface of the bottom layer indicating they were overdriven through the top layer. 5:252. A staple can also be overdriven when it does not completely penetrate the top layer. 5:248. Freemen never ruled out these other types of overdriven staples as alternate causes of the damage. Kimmel did not rule out any kind of overdriven staple as a cause of the damage. Consequently, their testimony was not probative evidence. *See Merrell*, 313 S.W.3d at 838.

## V.     HANSON HAS NOT SHOWN SHE WAS EXCUSED FROM SATISFYING THE POLICY'S CONDITION PRECEDENT REQUIRING HER TO REPAIR THE SUPPOSED DAMAGE IN ORDER TO BE ENTITLED TO REPLACEMENT COST BENEFITS.

Hanson can only muster one opinion in which a court held that the insured could recover replacement cost benefits without first repairing the damage. Appellee's Brief at 20. Hanson contends that the opinion in *Saitchick v. American Motorists Insurance Co.*, 554 F.Supp. 209 (S.D. N.Y.), supports her recovery of replacement cost benefits. There, the insurer asserted that the insureds had not satisfied the condition precedent for recovery. *Id*. at 216. The insureds asserted

4

that "various equitable axioms," including estoppel, precluded the insurer from relying on the condition precedent. *Id*. The court based its conclusion that the insureds were entitled to replace cost benefits based on "equitable considerations" and case law. *Id*. at 217 (stating, "I find that both case law and equitable considerations render replacement cost the appropriate method of valuing plaintiffs' damages."). Here, Hanson never asserted estoppel as an affirmative defense to her required satisfaction of the condition precedent. In fact, she never asserted or pled that she was not required to satisfy the condition precedent. Additionally, Hanson failed to show that she could not recover replacement cost benefits under the policy after recovering the proceeds of a judgment for actual cash value and performing the repairs.

## VI. HANSON FAILS TO IDENTIFY SUFFICIENT EVIDENCE TO ESTABLISH THAT SHE SEGREGATED THE CLAIMED ATTORNEY'S FEES.

In order to support her deficient attempt to comply with the lodestar method for proving attorney's fees, Hanson is forced to reduce the requirements in *Long* and *El Apple* to "at least some indication of the time spent on various parts of the case." Appellee's Brief at 25. But both require much more. "To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *El*

5

*Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012). "[G]eneralities about tasks performed provide insufficient information for the fact finder to meaningfully review whether the tasks and hours were reasonable and necessary under the lodestar method." *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014).

While she claims that the evidence here is "vastly different" from that in *Long* and *El Apple*, that is not the standard. Hanson fails to show how the notation "preparation for trial" permits the trial court to determine whether the time expended was reasonable and necessary. Appellee's Brief at 25. Plainly, it does not. It does not even identify what was done to prepare for trial. Because it does not document the performance of "specific tasks," but gives only a general category of work it is insufficient.

Moreover, she fails to show how entries giving the total time expended for a day, but listing four tasks permits a meaningful review of whether the time spent on each was reasonable and necessary. Obviously, the trial court has no way of determining reasonableness and necessity without knowing the amount of time expended on each task.

## VII    HANSON HAS FAILED TO SHOW THAT RULE 167 DOES NOT PRECLUDE HER RECOVERY OF DAMAGES AND ATTORNEY'S FEES THAT ACCRUED AFTER DECEMBER 4, 2013.

Hanson states that the "language" of rule 167 "makes it clear that the $15,000 attorney's fee award must be included in the equation" determining

whether Hanson recovered 80 percent of State Farm's offer. Appellee's Brief at 27. Conspicuously absent is any reference to any such language. Nor does Hanson establish that an attorney's fee award is a "monetary claim."

The statute provides, "If a settlement offer made under this rule is rejected, and the judgment to be awarded on the monetary claims covered by the offer is significantly less favorable to the offeree than was the offer, the court must award the offeror litigation costs against the offeree from the time the offer was rejected to the time of judgment." Rule 167.4(a). Here, the judgment awarded only $12,878 for breach of contract, the monetary claim. Attorney's fees are simply an add on amount and their recovery is entirely dependent on a successful breach of contract claim. TEX. CIV. PRAC. & REM. CODE § 38.001 (stating "A person may recover reasonable attorney's fees from an individual or corporation, in addition to *the amount of a valid claim* . . . ." (emphasis added)); *Ashford Partners, Ltd. v. ECO Resources, Inc.*, 401 S.W.3d 35, 40 (Tex. 2012). "A judgment award on monetary claims is significantly less favorable than an offer to settle those claims if: (1) the offeree is a claimant and the judgment would be less than 80 percent of the offer. . . ." Rule 167(b). The $12,878 award on the breach of contract monetary claim is only 43 percent of State Farm's $30,000 offer on that claim. CR 1541. Consequently, the rule applies.

7

**VIII. HANSON FAILS TO SHOW THAT SHE PROPERLY SEGREGATED RECOVERABLE ATTORNEY'S FEES FROM THOSE THAT ARE NOT RECOVERABLE.**

Hanson fails to offer any basis for her expert's opinion that only five percent of the fees incurred were for claims for which they were not recoverable. She cites no testimony showing how he arrived at that percentage. She states, "Segregated attorney's fees can be established with evidence of unsegregated fees and a rough percentage of the amount attributable to the covered vs. non-covered claims." Appellee's Brief at 29. But her expert's five percent figure does not even rise to the level of a rough percentage.

Hanson complains that the way the attorney applied a percentage to segregate attorney's fees in *Citizens Nat'l Bank v. NXS Constr., Inc.*, 387 S.W.3d 74, 88 (Tex. App.—Houston [14th Dist.] 2012, no pet.), is not the standard for segregation. But Hanson's expert offered no methodology for coming up with the five percent that he applied to determine what fees were incurred on claims for which they were not recoverable:

> A. *Chapa* is a case that basically says when you have different causes of action -- like here we've got a breach of contract cause of action and we've got a bad faith cause of action. And it says you need to apportion your time to each in case you're not successful on one of them.
>
> But what basically happens is in this case we're trying to get a new roof. So 95 percent of the time that we spend on this case is towards that. And that -- so in other words, the breach of -- the work

8

> you do for breach of contract and bad faith is inextricably intertwined. That's the terminology they use.
>
> I would estimate that 5 percent of the time that we've spent was spent solely on bad faith issues.

5:18-19. He provided nothing showing how he arrived at the five percent estimate. He did not identify the amount of time that was spent on the extra contractual claims. He did not identify the amount of time expended on the claims against Traise whom Hanson had nonsuited. In short, the five percent segregation is based on nothing more than the ipse dixit of the expert and is nothing but a bare conclusion that is not probative evidence.

Nor do the authorities on which Hanson relies show that an unsupported percentage is probative evidence of segregation. She relies on dicta in a footnote in *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 565 n.7 (Tex. App.—Texarkana 2003, pet. denied), that a "rough percentage" of the amount attributable to a breach of contract claim can be sufficient to segregate. However, segregation by a percentage was not an issue in the case. The court never held that an unsupported percentage was sufficient evidence of segregation. Again, in *Stewart Title Guaranty Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997), the percentage based segregation was not challenged and the court did not address whether it was sufficient. In *Alief Independent School District v. Perry*, 440 S.W.3d 228, 246 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), the

9

defendant never challenged how the plaintiff's expert arrived at the percentage he applied for segregation. Here, State Farm has. In *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 369 (Tex. App.—Fort Worth 1990, no writ), the percentage that was applied was not challenged as lacking support. The court did not hold that an expert witness can simply declare that a certain percentage should apply without showing what he based the percentage on.

In the end, the only courts that have addressed the sufficiency of a percentage based segregation in the cases the parties have cited were the ones in *Farmers Group Ins., Inc. v. Poteet*, 434 S.W.3d 316, 332 (Tex. App.—Fort Worth 2014, pet. denied), and *Citizens Nat'l Bank v. NXS Construction, Inc.*, 387 S.W.3d 74, 88 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Poteet*, the court held that applying a blanket percentage to the total amount of attorney's fees claimed was not evidence of segregation. 434 S.W.3d at 332, 333. That is what Hanson's expert did here. 5:18-19. In *NXS Construction*, the percentage was based on the attorney deducting fees attributable to claims for which they were not recoverable. 387 S.W.3d at 87-88. Hanson's expert did not do that. 5:18-19.

## IX. HANSON HAS FAILED TO SHOW THAT THE ATTORNEY'S FEE AWARD IS NOT EXCESSIVE.

The appellants spill a lot of ink trying to rebut the supreme court's assertion that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award" and "'the most critical factor in determining the reasonableness of a

10

fee award is the degree of success obtained.'" *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)). Appellee's Brief at 33-36. They imply that that is only true in civil rights cases. Appellee's Brief at 33-36. However, *Smith* was not a civil rights case. *Id*. at 546.

There, the plaintiffs sought damages for breach of a commercial lease. *Id*. The plaintiff sought $200,000 in damages, but the jury awarded only $65,000. The supreme court concluded that the $62,438.75 fee sought "was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due to circumstances unique to this case."[1] *Id*. at 548. Thus, the court's statements quoted above were neither limited nor applied to civil rights cases.

Other courts also recognize that the degree of success is the most critical factor in determining the reasonableness of an attorney's fee award. In *Ware v. United Lloyd's*, 2013 WL 1932812, *3 (Tex. App.—Beaumont 2013, no pet.), the only factor the court applied was the degree of success obtained. It affirmed the trial court's refusal to award attorney's fees where the plaintiff recovered $7833.01

---

[1] Nor did State Farm heavily rely on the holding in *Farrar* as appellants incorrectly assert. Appellee's Brief at 35. State Farm referred to *Farrar* only once in Appellant's Brief (stating in a parenthetical to the citation to *Smith*, "(quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)))."

in damages and sought $133,947 in attorney's fees. *Id*. at *3. *See also Brasel v. Manhattan Homeowners Ass'n*, 2014 WL 2809816 (Tex. App.—Houston [1st Dist.] 2014, no pet.), and *Farmers Group Ins. Inc. v. Poteet*, 434 S.W.3d 316 (Tex. App.—Fort Worth 2014, pet. denied) (both recognizing "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.").

Hanson also cites a long list of cases that have supposedly "held fee awards reasonable even when the amount of fees far surpasses the amount of actual damages." Appellee's Brief at 38. Here, the fees surpass the damages by a ratio of nearly six to one. Only two cases on which Hanson relies involved that type of fees to damages ratio. However, in *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex. App.—Dallas 1987, writ denied), the fees were not excessive because trial lasted four weeks. Here, trial lasted four days. The case does not establish that the fees here were not excessive. In *USAA County Mutual Insurance Company v. Cook*, 241 S.W.3d 93, 102-03 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the plaintiff recovered $23,310 in fees and $1926.56 in damages. However, the amount originally demanded was $2126.56, so the degree of success was 90 percent. *See id*. at 103. Here, the degree of success was only about 33 percent based of Hanson's demand during trial and about 25 percent of what she sought before trial. CR 1541. *Cook* does not establish that the attorney's fee award here is not excessive.

## CONCLUSION

State Farm respectfully requests the Court to grant the relief sought in Appellant's Brief.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: */s/ Bruce E. Ramage*
    Bruce E. Ramage
    State Bar No. 5492500
    *ramage@mdjwlaw.com*
    Kevin G. Cain
    State Bar No. 24012371
    *cain@mdjwlaw.com*
    Levon G. Hovnatanian
    State Bar No. 10059825
    *hovnatanian@mdjwlaw.com*
808 Travis, 20th Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

ATTORNEYS FOR APPELLANT
STATE FARM LLOYDS

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated Appellant State Farm Lloyds' Reply Brief contains 2941 words.

*/s/ Bruce E. Ramage*
Bruce E. Ramage
Dated: December 7, 2015

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appellant State Farm Lloyds' Reply Brief has been forwarded to the individual(s) listed below, by the method indicated, on this 7th day of December, 2015:

Mr. Richard D. Daly
*rdaly@dalyblack.com*
Mr. John Black
*jblack@dalyblack.com*
Ms. Melissa Waden Wray
*mwray@dalyblack.com*
RICHARD DALY LAW FIRM
2211 Norfolk Street, Ste. 800
Houston, Texas  77098
*(via e-filing and e-mail)*
*(Attorneys for appellee Ginger Hanson)*

*/s/ Bruce E. Ramage*
Bruce E. Ramage
