# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00670-CV

### In re Commitment of Todd Matthew Jurischk

## FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
## NO. C2017-1744A, THE HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## MEMORANDUM OPINION

In this civil commitment proceeding, the State petitioned to have appellant, Todd Matthew Jurischk, declared a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code §§ 841.001-.151 (the Act). After a jury found beyond a reasonable doubt that Jurischk was a sexually violent predator as defined in the Act, the trial court rendered a final judgment and entered an order of civil commitment. In four issues, Jurischk argues that (1) there is legally and factually insufficient evidence to support a finding that he is a sexually violent predator, (2) the trial court erred by admitting hearsay evidence of a nontestifying expert witness, and (3) the trial court gave the jury a coercive "*Allen* charge." *Allen v. United States*, 164 U.S. 492 (1896). We will affirm the trial court's judgment and order of civil commitment.

## BACKGROUND

In May 2006, Jurischk pleaded guilty to one count of indecency with a child by contact, *see* Tex. Penal Code § 21.11(a)(1), one count of sexual assault of a child, *see id.*

§ 22.011(a)(2), and two counts of sexual assault, *see id.* § 22.011(a)(1). The court assessed Jurischk's punishment at 15 years' confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) with respect to each of the charged offenses and ordered the sentences to run concurrently.

Before Jurischk was scheduled to be released from TDCJ, the State filed a petition in Comal County district court to civilly commit Jurischk as a sexually violent predator under the Act, alleging that he was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a). The trial court determined that Jurischk was indigent and appointed him counsel. Four witnesses testified at the jury trial: Dr. Stephen Thorne, the State's expert witness; Jurischk; Jurischk's father; and Jurischk's mother. The jury found that Jurischk is a sexually violent predator, and the trial court rendered a final judgment and order of civil commitment accordingly. *See id.* §§ 841.062(b) (jury determination that person is predator), .081(a) (order on civil commitment of predator).

## DISCUSSION

### *Legal and factual sufficiency challenges*

In his second and third issues, Jurischk claims that the evidence is legally and factually insufficient to support the jury's finding that he is a sexually violent predator. Specifically, he contends that the testimony of Dr. Stephen Thorne, the State's sole expert witness, was conclusory and speculative and thus constituted no evidence that Jurischk is a sexually violent predator.

2

A sexually violent predator is a person who (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). The State must prove beyond a reasonable doubt that the person it seeks to civilly commit is a sexually violent predator. *Id.* § 841.062.

Proceedings pursuant to the Act are civil in nature, but because the State's burden of proof at trial is the same as in a criminal case, we review verdicts in cases brought under the Act using the standard of review applied in criminal cases. *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Wirtz*, 451 S.W.3d 462, 464 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When reviewing a legal-sufficiency challenge to the evidence in a sexually violent predator case, we assess all of the evidence in the light most favorable to the verdict to determine whether a rational jury could find, beyond a reasonable doubt, each of the elements that the State must prove to support a judgment of civil commitment. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing factual-sufficiency challenges to the evidence in sexually violent predator cases, a reviewing court weighs the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that requires ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied); *see Wirtz*, 451 S.W.3d at 464-65 (noting that while factual sufficiency review has been abolished in

3

criminal cases in which State's burden is beyond reasonable doubt, courts have continued to perform factual sufficiency review in sexually violent predator cases, and declining to decide whether factual sufficiency review remains available in those proceedings because evidence in case at issue was legally and factually sufficient). The risk of an injustice is "essentially slight" when (1) the burden of proof is beyond a reasonable doubt and (2) the evidence is determined to be legally sufficient to support the jury's finding that the defendant is a sexually violent predator. *In re Commitment of Gray*, No. 03-16-00662-CV, 2018 WL 911863, at *1 (Tex. App.—Austin Feb. 16, 2018, no pet.) (mem. op.) (citing *Day*, 342 S.W.3d at 213). However, if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial. *Id.*

A judgment may not be supported by conclusory testimony even if a party did not object to the admission of such testimony. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). Expert testimony is conclusory if the witness does not provide an explanation of or a factual basis for his opinions. *Bustamante v. Ponte*, 529 S.W.3d 447, 462 (Tex. 2017). If no basis for the opinion is offered, or if the basis offered provides no support, the opinion does not constitute probative evidence. *Id.* Testimony regarding such an opinion amounts to no evidence because it does not tend to make the existence of a material fact more probable or less probable. *Pollock*, 284 S.W.3d at 816; *see Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008) (holding that expert testimony is conclusory if expert merely gives unexplained conclusion or asks jury to "take my word for it" because of expert's status).

Jurischk argues that Dr. Thorne's testimony that Jurischk suffers a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence is conclusory because, Jurischk contends, "Dr. Thorne's opinion is based on data that does not support his

4

conclusion." According to Jurischk, this alleged failing renders Dr. Thorne's opinion a "subjective interpretation" that is "too dependent" on "subjective guesswork." We disagree.

Dr. Thorne testified as an expert forensic psychologist. Dr. Thorne stated that he had examined Jurischk before testifying and that his evaluation was based on principles of forensic psychology. Dr. Thorne provided the jury with the statutory definition of "behavioral abnormality" found in chapter 841 of the Texas Health and Safety Code. He stated that the methodology he employs when conducting behavioral abnormality evaluations is a "clinically adjusted actuarial approach" and is the methodology followed by experts in the field of forensic pathology. This approach includes reviewing prison records and offense reports, conducting a personal interview, performing psychological and actuarial testing, and applying the relevant research to the specific case. Dr. Thorne testified that after completing the evaluation, his opinion was that Jurischk has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

After having testified regarding his opinion, Dr. Thorne testified at length about the basis for that opinion. First, Dr. Thorne noted that he does not believe that all sex offenders have a behavioral abnormality that makes them likely to engage in predatory acts of sexual violence. However, Dr. Thorne's diagnostic tools indicated to him that Jurischk is not a "typical sex offender." Dr. Thorne testified about the risk assessment he performed in order to determine the likelihood that Jurischk would commit some type of offense in the future. This assessment included considering both risk factors and protective factors. Dr. Thorne identified the two main risk factors for reoffending as (1) antisocial orientation or criminal predisposition and (2) sexual deviancy. According to Dr. Thorne, antisocial orientation is "the tendency to violate the rights of others or to break with the rules and expectations of society." Dr. Thorne testified that Jurischk

5

exhibited these tendencies by shoplifting at an early age, having numerous arrests, engaging in other violent and antisocial behavior that did not result in arrests, having problems following the rules in prison, and having problems following the rules while on probation or under other supervision. Dr. Thorne stated that these decades of problems with rule violations and criminal behavior indicated that Jurischk has an antisocial orientation.

Dr. Thorne testified that the other risk factor, sexual deviancy, can include violating others in a sexual manner or performing sexual acts with a person who is unable to consent. Dr. Thorne characterized Jurischk's history of sex offenses as constituting sexual deviance, an opinion he formed based on his review of the details of the various sex offenses that he recounted to the jury. For example, the first sex offense, which occurred in June 1988 when Jurischk was 20 years old, involved his sexual assault of a woman he met at a nightclub. The offense records indicated that Jurischk took the victim to an apartment he shared with his father, told her to take off her clothes, and "do it the way I ask you" or "take it rough." During the assault Jurischk made threats about killing the victim if she did not comply and told her that he would continue to sexually assault her after she was dead. After both vaginally and anally sexually assaulting the victim and forcing her to perform oral sex, Jurischk pulled her hair and told her to tell him she liked it and told her she was "a lame screw." The records also indicated that Jurischk told the victim that he "forgot to kick [her] ass and [he] meant to do that" and then slapped her. He also pointed a long gun at her face and told her to open her eyes while he talked about killing her. Finally, Jurischk blindfolded the victim and drove her around so she would not know where she had been. While they were driving, Jurischk punched the victim in the face, told her she was really stupid for going home with him, and took money from her purse.

6

When Dr. Thorne questioned Jurischk about this offense during a personal interview, Jurischk generally agreed that he had done "some things sexually" to the victim that were against her wishes but did not admit to the details. Dr. Thorne stated that while denying an offense is not necessarily a risk factor for reoffending, it does become relevant when determining how much a sex offender has progressed in his sex-offender treatment. Dr. Thorne opined that the degree of threats used during the offense, coupled with the violent acts and theft of money, indicate a high degree of antisocial behavior. Dr. Thorne stated that he considered it a risk factor that Jurischk assaulted a "stranger victim," which he defined as a person that the offender did not know 24 hours before committing the offense. Also significant to Dr. Thorne was the fact that Jurischk committed this offense while he was on community supervision for two counts of burglary and one count of theft. Dr. Thorne considered it a significant risk factor for reoffending that Jurischk would commit a crime while being monitored by a court and knowing that any probation violation could result in incarceration. Dr. Thorne also testified that committing sex offenses while under the influence of drugs or alcohol, as Jurischk did, indicates an increased risk for future sexual violence. Ultimately, Jurischk pleaded guilty to the assault and was given a ten-year prison sentence. Jurischk was released on parole after serving two years of the sentence. Although Jurischk was supposed to attend a sex offender treatment program, he failed to do so.

Dr. Thorne testified that Jurischk's parole was revoked after he was charged with resisting arrest, theft, and assault family violence. Jurischk was sent back to prison where, as he acknowledged in his testimony, he joined the Aryan Circle prison gang for protection. Dr. Thorne testified that it was significant that Jurischk committed offenses that would result in his going back to prison. After being released from prison in 2001, Jurischk was again charged with sexual assault in 2004. Jurischk went to the home of a 19-year-old woman he met at a tobacco

7

shop.  When the woman refused his sexual advances, Jurischk grabbed her, choked her, and threw her on a bed.  When he was unable to maintain an erection, Jurischk digitally penetrated her vagina and anus.  When the woman tried to escape, Jurischk dragged her back and held her down.  He asked her whether she wanted to die by suffocation or strangulation and put a pillow over her head.  When Dr. Thorne asked Jurischk about this assault, Jurischk acknowledged the general facts but said that, although she denied it, he and the woman had a previous sexual relationship.  Dr. Thorne testified that although this victim was not a complete stranger, the fact that she was an "acquaintance victim," or an extrafamilial victim, was also a risk factor for reoffending.  Dr. Thorne also noted that, again, Jurischk committed this offense while under the influence of drugs and alcohol, a risk factor for reoffending.  Dr. Thorne opined that Jurischk's having injured the woman was part of "an offense pattern of arousal to violence and threatening others or making others suffer."  The fact that Jurischk committed this offense after serving time in prison indicated "persistence after punishment," another risk factor for reoffending.

While Jurischk was out on bond for this offense, he committed another sex offense.  Jurischk, who by this time was 37 years old, assaulted a 14-year-old girl after a day of tubing on a river with the girl and her cousin.  After tubing, the three went to the victim's parents' house.  When the cousin went to the store to buy cigarettes, Jurischk pinned the girl down, took off her pants, and performed oral sex on her.  When he was unable to maintain an erection, he digitally penetrated her vagina while making crude comments about her.  The girl was able to escape and run up to the roof of the building.  Jurischk followed her but left when the girl's cousin returned to the house.  Dr. Thorne testified that the fact that the girl was another "stranger victim" was a risk factor for reoffending.  Dr. Thorne also stated that sex offenders who select victims much younger than they are have a high risk of reoffending.

8

Jurischk pleaded guilty to the assaults of the 19-year-old and the 14-year-old as well as to several counts of failing to register as a sex offender. He was sentenced to 15 years' imprisonment and was serving that sentence when the State filed its petition seeking civil commitment upon Jurischk's release from prison. Dr. Thorne testified that Jurischk's repeated sex offenses and his failure to register as a sex offender or to complete a sex offender treatment program indicate antisocial and sexually deviant behavior, both of which are risk factors for reoffending.

Dr. Thorne testified that Jurischk scored a 27 out of 40 on the Psychopathy Checklist (the PCL), which Dr. Thorne explained means that Jurischk is in the "high range of psychopathic tendencies."[1] This score ranked Jurischk in the top 5% of scores given to people Dr. Thorne has evaluated. Dr. Thorne defined a "psychopath" as someone who lacks remorse and empathy and who can be superficially charming but is able to violate the rights of others. Dr. Thorne opined that Jurischk fit that general description and that his offenses demonstrate lack of remorse or empathy for others. The PCL lists twenty traits, each of which is rated at a zero, one, or two. Jurischk scored a two for the traits of superficial charm, lack of empathy, and manipulative behavior.

Dr. Thorne testified that he also used the Static-99R to evaluate Jurischk. He explained that the Static-99R is a ten-item actuarial instrument commonly used by experts to assess a sex offender's likelihood of committing a future sex offense. Dr. Thorne scored Jurischk

---

[1] Dr. Thorne explained that he uses a score of 30 or above on the PCL as indicative of a psychopath, while other professionals use a lower number.

as a "positive 5," a score that places Jurischk in the above-average range for reoffending.[2] Dr. Thorne testified that he does not use the Static-99R in isolation to evaluate the risk of reoffending but considers it along with the other risk factors and protective factors. Dr. Thorne stated that it would be improper for him to make a prediction about whether Jurischk will reoffend in the future; rather, he is making an assessment about whether Jurischk has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In his opinion, Jurischk is likely to reoffend.

Dr. Thorne used the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) to diagnose Jurischk as demonstrating traits of antisocial personality disorder. Jurischk's history of sex offenses and other offenses are, in Dr. Thorne's opinion, evidence of a personality disorder. Dr. Thorne also made a "rule-out" diagnosis of sexual sadism, which means that "anybody who works with Mr. Jurischk in the future should rule out whether he meets the criteria for sexual sadism." Dr. Thorne did not diagnose Jurischk as a sexual sadist because he could not be positive that Jurischk was sexually aroused by his victim's suffering. According to Dr. Thorne, he is more conservative in his diagnoses than other experts might be.

Dr. Thorne also considered Jurischk's "protective factors," which are things that are thought to decrease an individual's risk for committing sex offenses in the future. These factors included that Jurischk appears to have social support, does not seem to have any significant psychiatric disorders other than having the high PCL score, and had not committed a sex offense against a "boy victim." Dr. Thorne stated that Jurischk likely has the ability to maintain employment. However, Dr. Thorne noted that the presence of these protective factors

---

[2] On cross-examination, Dr. Thorne confirmed that a parole board had assigned Jurischk a lower score.

10

has not prevented him from reoffending in the past. Dr. Thorne testified that Jurischk is "moving through" a nine-month sex offender treatment program while incarcerated, the completion of which would be another protective factor. Dr. Thorne expressed concern, however, that Jurischk has not taken full responsibility for his sex offenses and that he views himself differently from other sex offenders.[3]

Dr. Thorne then summarized the basis for his opinion that Jurischk has a behavioral abnormality, which is that Jurischk has two significant risk factors: antisocial behavior and sexual deviancy. Jurischk has reoffended after being punished for sex offenses and has demonstrated "persistence after punishment" on multiple occasions. Dr. Thorne testified that Jurischk has a pattern of rule violations, and although there are protective factors in place, they have not historically prevented him from reoffending. Dr. Thorne opined that the totality of the factors presented led him to the conclusion that Jurischk meets the criteria for having a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

On appeal, Jurischk argues that Dr. Thorne's opinion was conclusory and speculative, and thus constitutes legally insufficient evidence to support the jury's verdict. We disagree. Dr. Thorne reviewed records related to Jurischk's offenses and evaluations by other professionals. He personally interviewed Jurischk to gain further insight into his condition. Dr. Thorne employed the tests and actuarial tools that are recognized and used in his profession to determine whether Jurischk has a psychological condition and to measure the amount of risk to reoffend that Jurischk presents. Dr. Thorne's testimony did not lack objective, evidence-based support for his conclusions. Dr. Thorne's testimony presents a reasoned judgment based on

---

[3] Dr. Thorne recounted that Jurischk distinguished himself from other sex offenders by stating that "the look in their eyes is different."

11

established research and techniques for his profession and not the unsupported assertion, or mere *ipse dixit*, of a credentialed witness. *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010).

Viewing the evidence in the light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that Jurischk suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Stuteville*, 463 S.W.3d at 551-52. Viewing all of the evidence in a neutral light, we conclude that the jury was rationally justified in making the sexually violent predator determination beyond a reasonable doubt, and we cannot conclude that "the risk of an injustice remains too great to allow the verdict to stand." *See id.* We therefore hold that the State presented legally and factually sufficient evidence that Jurischk was likely to reoffend and commit a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a). We overrule Jurischk's second and third issues.[4]

### Admission of evidence of other expert's PCL score

In his first issue, Jurischk contends that the trial court erred in permitting Dr. Thorne to testify that, when reviewing Jurischk's records, he learned that another person had assigned Jurischk a PCL score of 33 and that he had seen the support for the score of 33 in those records. Counsel for Jurischk objected to this testimony at trial on the ground that it was improper to admit testimony of a witness not subject to cross-examination. Counsel also argued that the testimony was more prejudicial that probative and should be excluded on that basis. *See*

---

[4] Because we conclude that the evidence is legally and factually sufficient in the present case, we need not address the State's argument that factual sufficiency review should be abandoned in civil commitment cases where the State's burden of proof is beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (abandoning factual sufficiency review in criminal cases where State's burden of proof is beyond reasonable doubt).

Tex. R. Evid. 705(d) (facts or data relied on by expert in forming opinion may be excluded if probative value is outweighed by prejudicial effect). The court overruled these objections.

On appeal, Jurischk complains that the evidence should not have been admitted because it constituted the hearsay opinion of an expert not subject to cross-examination and that Dr. Thorne's testimony was used to "back door in" another expert's testimony and to bolster his own opinion. Rule 705 of the Texas Rules of Evidence provides that an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data supporting his opinion. *See id*. "When an expert relie[s] upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *In re Commitment of Salazar*, No. 09-07-00345-CV, 2008 WL 4998273, at *4 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). Hearsay evidence that would otherwise be admissible may be excluded if its probative value in helping the jury evaluate the opinion is outweighed by its prejudicial effect. *See* Tex. R. Evid. 705(d). If the court allows the jury to hear such evidence and the opponent of the evidence makes a timely request, the court must provide a limiting instruction to the jury, restricting the jury's use of the evidence. *Id.*; *see In re Commitment of Carr*, No. 09-14-00156-CV, 2015 WL 1611949, at *2 (Tex. App.—Beaumont Apr. 9, 2015, no pet.) (mem. op.). During his testimony, Dr. Thorne confirmed that he formed his opinions after reviewing Jurischk's prison records, which included a record that another professional had given Jurischk a PCL score of 33. Dr. Thorne considered the PCL score given by the other professional in forming his opinion but did not himself score Jurischk higher than 27. Dr. Thorne's testimony indicates that while he considered the information in Jurischk's records, along with a significant amount of other information, he did not form an opinion about

13

whether Jurischk had a behavioral abnormality until after he reviewed all the records and personally interviewed Jurischk.

We disagree that Dr. Thorne was acting as an improper conduit for admitting the opinion of a different expert not subject to cross-examination. Rather, Dr. Thorne explained that his opinion was based on the information contained in Jurischk's records, including the evaluations performed by different professionals, and that this information is reasonably relied on by experts in his field. Dr. Thorne testified that he reviewed but did not adopt the other professional's evaluation. Thus, the admission of this evidence could not be considered to "bolster" Dr. Thorne's opinion. *See Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) ("bolstering" is evidence "the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit" and evidence that "enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency to establish a fact of consequence, should not be considered 'bolstering'"). Moreover, the trial court included a limiting instruction to further restrict the jury's use of the other expert's opinion.[5] This Court must presume that the jury followed the instructions included in the charge. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). Any error in permitting Dr. Thorne to disclose the PCL score assessed by a separate

---

[5] The jury charge instructed the jury that hearsay information contained in the records reviewed by the expert was admitted through expert testimony and that it was admitted only for the purpose of showing the basis for the expert's opinion and could not be considered as evidence to prove the truth of the matter asserted.

14

professional was rendered harmless by the court's limiting instruction.[6]  We overrule Jurischk's

first issue.

### *Allen* **charge**

In his fourth issue, Jurischk contends that the court erred by giving the jury an

improperly coercive *Allen* charge.  After hearing evidence from each party, listening to closing

statements, and receiving the trial court's final instructions, the jury recessed for deliberation

from 2:20 p.m. until 5:00 p.m.  Deliberations continued the next day, beginning at 9:00 a.m.  At

9:53 a.m., the jury sent a note stating they were "at an impass[e]" with ten jurors answering

"yes" to the question of whether they found beyond a reasonable doubt that Jurischk is a sexually

violent predator and two jurors answering "no."  The trial court stated that he intended to call the

jury in and tell them to continue their deliberations.  Jurischk's counsel objected and moved for a

mistrial, arguing that instructing the jury to continue deliberating would suggest that the court

intended to "confine them until a verdict is reached."  The court overruled the objection, brought

the jury in, and stated:

> Good morning, ladies and gentlemen.  I've got a letter from the jury stating that
> they're at an impasse and waiting for further instructions.  And the instructions
> are to continue deliberations.  In the Court's opinion, there hasn't been enough
> time gone by.  And if you will retire to the jury room, continue deliberation in an
> effort to try to reach a verdict.

---

[6]  Moreover, as explained above, Dr. Thorne's testimony, even excluding the information that a separate professional gave Jurischk a PCL score of 33, was legally and factually sufficient to support the jury's verdict.

At 1:31 p.m. the jury sent a note stating that they were still "at in impass[e]" with eleven jurors voting "yes" and one juror voting "no." The court informed the parties that he intended to give the jury the following *Allen* charge:

> If this jury finds itself unable to arrive at a verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment would still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Do not do violence to your conscience, but continue deliberating.

Jurischk's counsel objected on the ground that the charge would cause undue pressure on the jury and would be coercive. Specifically, counsel argued that the last sentence was coercive and that the charge suggested that the court would confine the jury until it reached a verdict. Counsel again moved for a mistrial. Approximately five minutes after the *Allen* charge was sent to the jury,[7] it returned a unanimous verdict finding that, beyond a reasonable doubt, Jurischk is a sexually violent predator. The court rendered judgment on the jury's verdict. Jurischk asserts that the trial court committed reversible error by giving the jury an unduly coercive *Allen* charge.

An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. *See Allen v. United States*, 164 U.S. 492 (1896). It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is

---

[7] It is not clear from the record whether the jury actually received the written *Allen* charge from the court before it reached its verdict. In his motion for new trial, Jurischk states: "It is unclear at the time of this filing whether the charge was received by the jury prior to notice that they had reached a verdict."

no guarantee a second jury would find the issues any easier to resolve. *Id.* While such a charge is permissible in both federal and Texas courts, trial courts must carefully word the instruction and administer it in a non-coercive manner. *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006).

The primary inquiry when considering the propriety of an *Allen* charge is its "coercive effect" on juror deliberations in its context and under the circumstances. *Freeman v. State*, 115 S.W.3d 183, 186-87 (Tex. App.—Texarkana 2003, pet. denied). An *Allen* charge that pressures jurors into reaching a particular verdict or that improperly conveys the court's opinion of the case is unduly coercive. *West v. State*, 121 S.W.3d 95, 107-08 (Tex. App.—Fort Worth 2003, pet. ref'd). Conversely, a charge that speaks to the jury as a whole and encourages jurors to reexamine their views without surrendering honest convictions is not coercive on its face. *Freeman*, 115 S.W.3d at 187.

Here, the charge addressed the entire jury, not any particular juror, and instructed the jurors to continue deliberating without doing violence to their conscience. The charge did not pressure jurors into reaching a particular verdict nor convey the trial court's opinion of the case in any way. The Court of Criminal Appeals and this Court have approved *Allen* charges containing almost identical language. *See Arrevalo v. State*, 489 S.W.2d 569, 571-72 (Tex. Crim. App. 1973); *Deaton v. State*, No. 03-08-00455-CR, 2009 WL 1811068, at *8-9 (Tex. App.—Austin June 26, 2009, pet. ref'd) (mem. op., not designated for publication); *see also Draper v. State*, 335 S.W.3d 412, 417 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *West v. State*, 121 S.W.3d 95, 108-09 (Tex. App.—Fort Worth 2003, pet. ref'd). We overrule Jurischk's fourth issue.

## CONCLUSION

Having overruled each of Jurischk's four appellate issues, we affirm the trial court's judgment and order of commitment.

 

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   May 31, 2019