**Opinion issued June 15, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00529-CV

———————————

**THE IOLA BARKER AND JAMES TRICE, Appellants**

**V.**

**MONICA HURST AND SCOTT MARTINDALE, Appellees**

On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Case No. 34,116

# O P I N I O N

In a previous appeal, appellants, The Iola Barker ("the Barker") and James

Trice, challenged the trial court's denial of their motion to dismiss, under the Texas

Citizens' Participation Act ("TCPA"),[1] the defamation claims brought against them by appellees, Monica Hurst and Scott Martindale. *See The Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at *1 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.). After we reversed and remanded, the trial court granted appellants' TCPA motion, dismissed appellees' claims, and awarded appellants statutory attorney's fees, costs, and expenses. In the instant appeal, appellants contend, through three issues, that the trial court erred in not awarding them the full amount of their attorney's fees, costs, and expenses.

We affirm in part and reverse and remand in part.

### Background

In April 2017, the Iola Independent School District (the "District") sought a "District of Innovation" ("DOI") designation, authorizing it to declare exemptions from certain provisions of the Texas Education Code.[2] *Id*. The Barker, an anonymous blog, published several articles about the potential effects that it believed such designation might have on teachers, administrators, students, and parents, and it encouraged readers to attend public hearings on the issue. *Id.*

Before one such District hearing, the Barker reported that Hurst, the District's Director of Technology, had publicly posted on her Facebook page a "meme," or

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

[2]    *See* TEX. EDUC. CODE §§ 12A.001–.009.

2

photograph with superimposed comments, depicting a scene from a movie, *Men in Black*.[3] *Id.* The Barker re-published the meme, adding commentary, as follows:

> For your judgment, here is a post that was on a member of administrations' Facebook page and was open to the public.



> Sure, it seems innocent until you realize what the device in the picture accomplishes. As previously discussed, this device is a Neuralizer and it wipes the memories (opinions) of those that it is used on and the user then replaces the wiped memories (opinions) with what they want the victim to believe. To us this is implying that we can form our own opinions but they are going to ignore them and do exactly what they want to do and assume that everyone shares the administration's opinions . . . .

*Id.*

---

[3] MEN IN BLACK (Columbia Pictures 1997).

On April 21, 2017, Hurst brought a suit for injunction against the Barker, complaining that its re-publishing of her Facebook posting, which included her Facebook profile picture depicting her husband and two minor children, was malicious and intended to harm her and her family. *Id.* She sought an injunction to prevent the Barker "from utilizing the photographs of children or anyone else, without the written permission and consent of the natural mother or father of any child." *Id.* Through discovery, Hurst identified Trice as the author of the blog. *Id.*

In June 2017, Martindale, a District principal, joined the lawsuit, bringing a claim against the Barker and Trice for libel per se. *Id.* at *2. Martindale alleged that, in April 2017, the Barker published several stories mentioning him by name and that such acts were malicious and intended to harm him and his family. *Id.*

On August 18, 2017, appellants filed a TCPA motion to dismiss the suit, asserting that appellees had brought their claims simply to uncover Trice's identity and to quell his exercise of the right of free speech. *Id.* They asserted that the statements at issue involved discussion of the District's attempt to obtain a DOI designation, and the blog posts discussed appellees solely within the context of their actions as public officials, both as administrators at the District and as members of the planning committee. *Id.* Further, appellants asserted, appellees could not establish by clear and specific evidence a prima facie case for each essential element

of their claims.[4] *Id.* Appellants sought dismissal with prejudice and asserted that they were statutorily entitled to an award of attorney's fees and sanctions.[5] *Id.*

Days later, on August 22, 2017, Hurst filed a motion for nonsuit without prejudice, stating that she no longer wished to prosecute her claim. *Id.* The trial court granted her motion, dismissing her claims without prejudice. *Id.*

In his response to the motion to dismiss, Martindale attached, as his evidence to defeat the TCPA motion, his affidavit and that of a teacher, Jenna Conner, and 100 pages of blog entries from the Barker. *Id.* In his affidavit, Martindale testified that, on April 25, 2017, in a blog titled, "Donnez-leur un pouce et ils prendront un mile," the Barker commented:

> It appears to us that they haven't had any issues getting rid of our teachers. Oh, by the way, this week is the week for the School Board to vote on teacher[s'] contracts. Now that Martindale's wife is an Iola ISD employee, it will be much easier for them to choose which ones they need to get rid of to open positions for their friends, i.e. the kindergarten teacher that use [sic] to be the Martindale[s'] nanny.

*Id.*

Martindale complained that the statement alleged that he had "engaged in improper terminating and hiring practices by forcing out an existing teacher so that he could hire an individual [who] had previously worked for him and his family as a nanny." *Id.* He identified the teacher referenced as Jenna Conner, whom, he

---

[4] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).

[5] *See id.* § 27.009.

5

asserted, had not worked for him or his family. *Id.* He complained that Trice had not spoken with him to verify the veracity of the comment before publishing it and that the accusation was "blatantly untrue." *Id.* He asserted that the publication had "injured [his] reputation," "exposed [him] to contempt in the community," and "called into question [his] honesty, integrity, virtue, and reputation." *Id.* Conner, in her affidavit, testified that she believed that she was the teacher referenced in the comment, that she had never worked as a nanny for Martindale or his family, and that Trice had not spoken with her. *Id.*

Martindale asserted, as evidence of the elements of his defamation claim[6] to defeat the TCPA motion to dismiss, that Trice had published in the Barker the statement at issue, i.e., that he engaged in improper hiring practices, that the affidavits established the falsity of the statement, and that the statement was defamatory because it tended to injure his reputation, personally and professionally. *Id.* at *3. To establish actual malice, Martindale requested a continuance in order to depose Trice. *Id.* Martindale asserted that "there [was] no requirement that proof of damages be offered" because the statement at issue was "defamatory per se." *Id.*

After a hearing, the trial court found that the TCPA applied to Martindale's claim because it was based on appellants' exercise of the right of free speech, the

---

6   *See id.* § 73.001; *Deaver v. Desai*, 483 S.W.3d 668, 676 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (listing elements of defamation claim).

6

communication at issue was made in connection with a matter of public concern, and that Martindale was a "public official or public figure." *Id.* And, Martindale had established, by clear and specific evidence, that appellants had "made a false statement of fact to a third person," that "the statement was defamatory concerning [Martindale]," and that the statement caused damage to Martindale. *Id.* The trial court ordered that good cause existed to allow Martindale, as requested, to take Trice's deposition on the "limited issue of actual malice." *Id.* On October 25, 2017, appellants' motion to dismiss was denied by operation of law.[7] *Id.*

On appeal, appellants asserted that their motion to dismiss survived Hurst's nonsuit and that the trial court erred in denying their motion to dismiss the claims against them because Hurst did not establish by "clear and specific evidence a prima facie case for each essential element" of her claim. *Id.* Because Hurst's nonsuit did not resolve appellants' TCPA motion to dismiss and there was no indication in the record that the trial court actually considered the motion on the merits with respect to Hurst, we remanded the issue. *Id.* at *6. With respect to Martindale's claim, we held that the trial court erred in denying appellants' motion because the complained-of statement did not constitute defamation per se and Martindale did not meet his burden to present clear and specific evidence of injury and damages. *Id.* at *9. We

---

[7] *See* TEX. CIV. PRAC. & REM. CODE § 27.008(a) ("If a court does not rule on a motion to dismiss . . . in the time prescribed . . . , the motion is considered to have been denied by operation of law and the moving party may appeal.").

7

reversed the trial court's order and remanded for dismissal and a determination of attorney's fees and sanctions consistent with the TCPA. *Id.*

On remand, the trial court dismissed appellees' claims, noted that appellants were entitled to recover attorney's fees, court costs, and expenses, and directed that they submit evidence in support. Appellants filed a Memorandum in Support of Attorney's Fees and Sanctions, to which they attached, as discussed below, detailed billing statements and the affidavits of their trial and appellate counsel, Alicia Calzada, and of their expert on attorney's fees, Thomas S. Leatherbury. Appellees filed a response, to which they appended the affidavits of their experts on attorney's fees, Roy D. Brantley and Terrance D. Dill, Jr.

In its final judgment, the trial court ordered that Trice recover "attorney's fees, court costs and expenses" from Hurst in the amount of $7,000.00 and from Martindale in the amount of $9,000.00. It also awarded conditional appellate attorney's fees and ordered that Hurst and Martindale each pay Trice $2,500.00 as sanctions. Findings of fact and conclusions of law were not filed.

**Attorney's Fees, Costs, and Expenses**

8

In their first issue, appellants argue that the trial court erred in awarding them only $9,000.00 in attorney's fees against Martindale and $7,000.00 in attorney's fees against Hurst because appellants presented "clear, detailed specific evidence following the lodestar method and in compliance with *Rohrmoos Venture* [*v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019)]." In a sub-issue, appellants argue that the trial court erred in overruling their objections to appellees' controverting affidavits because, as pertinent here, the testimony by Brantley and Dill was conclusory and constituted no evidence. In their second issue, appellants assert that the trial court erred in "not awarding mandatory court costs and uncontroverted expenses." In their third issue, appellants assert that the trial court erred in awarding appellate attorney's fees. We address these interrelated issues together.

***Standard of Review and Governing Legal Principles***

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." TEX. CIV. PRAC. & REM. CODE § 27.002. It "protects citizens . . . from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the expedited dismissal of such suits. *In re Lipsky*, 460 S.W.3d 579, 584, 586 (Tex. 2015). The TCPA is intended to identify and summarily

9

dispose of lawsuits "designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Id.* at 589. It is to be "construed liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b).

A defendant who believes that a lawsuit is based on his valid exercise of First Amendment rights may move for expedited dismissal of the suit. *Lipsky*, 460 S.W.3d at 586. The defendant must first show by a preponderance of the evidence that the TCPA applies, that is, that the plaintiff's legal action is based on, relates to, or is in response to certain actions, including the defendant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. *Id.* at 586–87; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.001(6), 27.005(b), 27.010(b); *James v. Calkins*, 446 S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). If the initial showing is made, the burden shifts to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). If the defendant's constitutional rights are implicated and the plaintiff does not meet the required showing, the trial court must dismiss the plaintiff's claim. *Id.* § 27.005.

The version of Civil Practice and Remedies Code section 27.009[8] applicable to this case states that a trial court that orders dismissal of a legal action "shall award" the movant:

> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and
>
> (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

*Id.* § 27.009; *see Sullivan v. Abraham*, 488 S.W.3d 294, 298–99 (Tex. 2016) (holding that section 27.009 "reflects both that costs and attorney's fees are 'expenses' and that they must all be 'incurred' in defending the legal action").[9]

A determination of "reasonable attorney's fees" rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *See Sullivan*, 488 S.W.3d at 299. A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v.*

---

[8] Because this case was filed prior to the effective date of the 2019 amendments to the TCPA, the prior version of the statute governs this appeal. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684; *see also id.* at §§ 11–12, 2019 Tex. Gen. Laws at 687.

[9] The Texas Supreme Court has noted that although the legislature sometimes employs the terms "reasonable and necessary" and sometimes just the term "reasonable," the distinction between the provisions is immaterial. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 488–89 (Tex. 2019). A claimant seeking attorney's fees from the opposing party must prove that the requested fees are both reasonable and necessary. *Id.*

11

*Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). When a trial court does not specify the basis for its attorney's fee award, we will uphold its ruling on any basis supported by the evidence. *See Weingarten Realty Inv'rs v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

The "reasonable" standard is a question of fact to be determined by the fact finder and acts as a limit on the amount of fees that a prevailing party can shift to the non-prevailing party. *Rohrmoos Venture*, 578 S.W.3d at 489. Generally, in determining the reasonableness of attorney's fees, courts consider:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)     the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see also Wayland v. City of Arlington*, 711 S.W.2d 232, 233 (Tex. 1986) ("One of

12

the factors in determining the reasonableness of attorney's fees [is] the amount of damages awarded."); *Calhoun/Holiday Place, Inc. v. Wells Fargo Bank*, *N.A.*, No. 01-14-00872-CV, 2016 WL 7671372, at *8 (Tex. App.—Houston [1st Dist.] Dec. 22, 2016, pet. denied) (mem. op.) ("A trial court need not receive evidence on each *Arthur Andersen* factor. . . .").

Here, appellants applied for attorney's fees under the "lodestar method." *Rohrmoos Venture*, 578 S.W.3d at 496. The lodestar method was developed as a "short hand version" of the *Arthur Andersen* factors. *Id.* Although the lodestar method was "never intended to be a separate test or method," it is a "focused and objective analysis of whether the fees sought are reasonable and necessary." *Id.* The calculation "yield[s] a base figure that reflects most *Arthur Andersen* factors and is thus presumptively reasonable." *Id.* However, the figure is subject to adjustment if the presumption is overcome by other *Arthur Andersen* factors not accounted for in the base lodestar figure. *Id.*

Under a lodestar analysis, the determination of what constitutes a reasonable attorney's fee involves two steps:

> First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id.* at 494 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

13

Thus, under the first step, the factfinder determines the reasonable hours that counsel worked on the case and the reasonable hourly rate for such work. *Id.* at 498. The factfinder then multiplies the number of hours worked by the applicable rate. *Id.* There is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party. *Id*. at 499.

It is the fee claimant's burden to provide sufficient evidence. *Id.* at 498. This includes evidence of (1) the particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id*. Contemporaneous billing records are not required to prove that the requested fees are reasonable. *Id.* at 502. However, "[g]eneral, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 763. Rather, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). Charges for duplicative, excessive, or inadequately documented work should be excluded. *El Apple I*, 370 S.W.3d at 762.

The second step allows the factfinder to determine whether evidence of other considerations overcomes the presumption of reasonableness. *Rohrmoos Venture*, 578 S.W.3d at 501. The base figure may be increased if considerations establish that it represents an unreasonably low fee award and thus deprives the prevailing party's attorney of fair compensation. *Id*. at 502. Likewise, the base figure may be decreased if such considerations establish that the fee is unreasonably high or excessive, creating a windfall for the prevailing party or its attorney. *Id.* A fee claimant seeking an enhancement must produce specific evidence showing that a higher amount is necessary to achieve a reasonable fee award. *Id.* at 501. And, a fee opponent seeking a reduction bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base figure. *Id.*

The non-exclusive considerations under the second step may include any not subsumed in the first step, such as: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the fee customarily charged in the locality for similar legal services, (5) the amount involved, (6) the experience, reputation, and ability of the lawyer or lawyers performing the services, (7) whether the fee is fixed or contingent on results obtained, (8) the uncertainty of collection before the legal services have been rendered, and (9) the results obtained. *Id.* at 500.

1.     *Base Lodestar Calculation*

Here, in support of their claim for attorney's fees, appellants presented their billing invoices and the affidavits of their trial and appellate counsel, Calzada, and their expert on attorney's fees, Leatherbury.

In her affidavit, as supplemented, Calzada testified regarding the work performed by The Rifle Law Firm ("Rifle"), Haynes and Boone, LLC ("Haynes"), and the Calzada Law Firm between May 2017 and April 2019 and the hourly rates charged. From May to August 2017, appellants were represented by Rifle, where attorney "JLB" performed 2.10 hours of work at $250.00 per hour, for a total of $525.00. Subsequently, from August to September 2017, appellants were represented by Haynes, where partner Laura Prather performed a total of 6.50 hours of work at a rate of $525.00 per hour, for a total of $3,412.50. Calzada, who was then a Haynes associate, performed 58.00 hours of work at $350.00 per hour, for a total of $20,300.00. Haynes associate Mark Flores performed 6.0 hours of work at a rate of $450.00 per hour. However, his time was "written off." Haynes paralegal Olga Marshall worked 2.50 hours at a rate of $195.00 per hour, for a total of $487.50. In October 2017, Calzada opened her own practice. Thereafter, she performed 144 hours of work at $250.00 per hour, for a total of $36,000.00. Multiplying the hours worked by each applicable rate yields total fees of $60,725.00. *See Rohrmoos Venture*, 578 S.W.3d at 498.

Calzada testified in detail regarding the work that was performed, as follows:

13. The defense work done to protect and preserve the rights of defendants at the trial court level included: reviewing the claims, considering strategic options for defending against the claims, conferring with client at various points in the case, reviewing and analyzing constantly evolving case law, drafting the initial Motion to Dismiss Pursuant to the TCPA, drafting reply to Response to Motion to Dismiss, drafting related affidavits, reviewing the motion for non-suit, drafting pleading to court regarding non-suit, researching joint and several liability, preparing for hearing on the Motion to Dismiss, drafting a memorandum on attorney's fees in 2017, reviewing a retraction request from Plaintiff, reviewing discovery request, drafting response to discovery request, and drafting a memo in support of dismissal with prejudice, attending and participating in the hearing, drafting a response to objections to the affidavit, and drafting a request for the court to rule within the 30-day deadline as well as other pleadings.

14. When the trial court did not rule within the statutorily required 30 days, an appeal was required. . . .

15. Believing that Plaintiffs were proceeding with their claims, Defendants were forced to proceed with their appeal and mount a vigorous argument on appeal. On the day their appellee brief was due, Plaintiffs filed a letter with the court of appeals stating that they would not be filing a response. . . .In doing so, Plaintiffs continued this lawsuit at great expense to defendants, while incurring little personal cost.

16. On appeal, the work performed included . . . drafting the Appell[ants'] Brief . . . . In its opinion, the First Court of Appeals reversed the denial of the Motion to Dismiss, remanding Martindale's claims for dismissal and determination of attorney's fees and sanctions. It remanded Hurst's claim for determination of the TCPA on the merits as to Hurst's claim. . . .

17. Now that the case has been remanded back to this Court, time has been spent drafting a memorandum updating the court with the status of the case, drafting proposed orders, . . . communicating with court, drafting the Memo in Support of Martindale Attorney's Fees, affidavits related to attorney's fees and sanctions, and communications with Defendants . . . .

17

Calzada supported her affidavit with billing invoices. The invoices also reflect that, from May to August 2017, appellants were represented by Rifle, where attorney "JLB" performed 2.10 hours of work at $250.00 per hour. From August to September 2017, appellants were represented by Haynes, where Prather worked 6.50 hours at $525.00 per hour, Calzada worked 58.00 hours of work at $350.00 per hour, Flores worked 6.0 hours at no charge, and Marshall worked 2.50 hours at $195.00 per hour. And, from October 2017 through April 2019, Calzada worked for 144 hours at $250.00 per hour. Each invoice details the services performed, the length of time, the dates performed, and by whom. In sum, the invoices reflect total hours of 219.10 and total billing, after discounts, of $59,500.00.

Further, Calzada, in her supplemental affidavit, segregated the fees attributable to defending against the claims of each plaintiff as follows:

> 11.  . . . [appellants] have incurred $60,903.50 in attorney's fees, expenses and court costs defending against the claims of [Martindale]. Of that, $50,071.00 was jointly and severally incurred while defending against the claims of both Martindale and Hurst, and not reasonably segregable.
>
> 12.  . . . [appellants] have incurred $59,501.43 in attorney's fees and court costs defending against the claims of [Hurst]. Of that, $50,071.00 was jointly and severally incurred while defending against the claims of both Hurst and Martindale, and not reasonably segregable.

With respect to the reasonableness of the hourly rate for each person performing services, Calzada testified that she has been a licensed, practicing attorney in Texas since 2011. *See Rohrmoos Venture*, 578 S.W.3d at 498. She

18

primarily practices in Bexar, Dallas, Harris, and Travis Counties, and she has knowledge and experience practicing law pertaining to TCPA claims. She testified that the rates charged in this case are comparable to or lower than rates customarily charged by legal professionals with similar levels of experience at similar law firms in Harris and in other counties,[10] and she cited and attached numerous cases with fees ranging from $375 to $835 per hour. She noted that she writes and speaks regularly on the TCPA and has represented clients in numerous lawsuits involving the TCPA, with favorable outcomes.

Further, she testified, Marshall is a certified paralegal with 10 years of experience, and the work she performed was not clerical, was the type usually performed by attorneys, and was supervised by Calzada.

---

[10] This Court has held that locality is not limited to a specific county:

> The appellant would have us hold that the statement, "the trier of fact should consider the amount charged by other attorneys in the locality doing similar work," is limited to the charge made by other attorneys in a specific county, in this instance Brazos County. We reject this argument and hold that the trier of fact should consider the amount charged by other attorneys in the general locality or area doing similar work. Since the attorneys for each of the contestants in this appeal were also the attorneys at the trial court level, it is obvious that they do not restrict their practice to one county. This is so because the trial court was located at Brazos County and this court is located in Harris County. . . . To require that an attorney know the usual and customary reasonable fees in every individual county or city within the area of a trial court would be unduly restrictive.

*Brazos Cty. Water Control & Imp. Dist. No. 1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

19

Appellants' expert, Leatherbury, testified in his affidavit, as follows:

2. I am a Partner in and co-leader of the Appellate Practice Group at Vinson & Elkins LLP. . . . I have been in private practice in Dallas since 1980 and have devoted my practice to civil trial and appellate work since then. A great deal of that work has involved representing publishers and broadcasters in libel, privacy and other litigation. Since 2011, when the [TCPA] was passed, I estimate that I have worked on 30 or more cases involving TCPA issues. I have also written and spoken extensively about libel, privacy, and the TCPA. . . .

3. As the head of our Media Litigation Practice, I am aware of what the prevailing rates in the industry are, and in particular, what reasonable rates are in the area of First Amendment law. I am familiar with the hourly rates charged across the state of Texas by lawyers with the experience, reputation, and ability similar to that of the two lawyers who charged fees in this case, Laura Prather and Alicia Calzada.

4. The hourly rates charged by the attorneys in this case were well within the range of what is typically charged across the state for similar services related to First Amendment litigation and practice, and in cases involved the TCPA. . . .

5. The rate of $525 per hour for the work done by [Prather]— a Partner at [Haynes], who was instrumental in the passage of the TCPA, and who is the co-author of a seminal law review article on the TCPA—was reasonable and well within the typical rate charged by an attorney of her experience, reputation and ability. Ms. Prather is a highly regarded media law attorney. . . .

6. Likewise, I am familiar with the reputation, experience and ability of [Calzada], who was involved in the passage of the TCPA, and who has written and spoken on the TCPA as well as other issues related to publishing and media law. She is known as an attorney who has successfully invoked the TCPA in numerous cases since its inception. . . . The rate of $350 while Ms. Calzada was at [Haynes] was reasonable and at the low-end of the range of rates charged by an attorney of her experience, reputation and ability at a large law firm like [Haynes]. . . . .

7. I have reviewed the invoices and billing records in this case. Defendants' attorneys have spent 220 hours through April 30, 2019, defending against this claim through appeal and back to the trial

court on remand. This is on the low end of the range of time typically spent successfully defending a TCPA case through appeal. . . . I have considered the fact that the Defendants had to file an Answer, Special Exceptions, and Affirmative Defenses, a Motion to Dismiss under the TCPA, and a Reply to Plaintiffs Response to the Motion to Dismiss. I further considered the fact that the Defendants' attorneys had to prepare for and attend the hearing on the Motion to Dismiss and file additional briefing after the hearing. When the Motion to Dismiss was denied by operation of law, it was necessary to file an immediate, expedited, interlocutory appeal. . . . On remand, again careful drafting of attorney's fees evidence and organizing supporting documents is essential to obtaining the most favorable results for a client. Having considered this and reviewing the billing records through April 30, 2019, it is my opinion that the time spent on this case was reasonable and the tasks completed were necessary.

Leatherbury further testified that the "time expended on each task" was reasonable considering the time and labor required. The rates charged were reasonable considering the fee customarily charged for similar legal services and the experience, reputation, and ability of Calzada and Prather.

Thus, appellants presented evidence that the fees attributable solely to defending against Martindale's claims totaled $10,832.50, the fees attributable solely to defending against Hurst's claims totaled $9,430.43, and the fees for work that was not reasonably segregable, and for which Martindale and Hurst were jointly and severally liable, totaled $50,071.00. They presented evidence of (1) the particular services performed, (2) who performed the services, (3) when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See*

21

*Rohrmoos Venture*, 578 S.W.3d at 498. The evidence informed the trial court of the time spent on specific tasks and enabled it to meaningfully review the requested fees. *See Long*, 442 S.W.3d at 255. Because the base lodestar calculation is supported by sufficient evidence, there is a presumption that it reflects the reasonable attorney's fees that could be shifted to appellees in this case. *See Rohrmoos Venture*, 578 S.W.3d at 499.

In its final judgment, however, the trial court awarded appellants "attorney's fees, court costs and expenses" against Martindale in the amount of $9,000.00 and against Hurst in the amount of $7,000.00. The record does not reflect that findings of fact and conclusions of law were requested or filed. We next consider whether evidence of other considerations overcame the presumption of reasonableness. *See id.* at 501.

### 2. *Adjustments to Base Lodestar Calculation*

Appellees, as fee opponents seeking a reduction, had the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar calculation. *See id.* To controvert appellants' evidence in support of their fees, appellees presented the affidavits of their experts, Brantley and Dill.

As a threshold matter, appellants, in a sub-issue on appeal, argue that the trial court erred in considering Brantley's and Dill's affidavits because, inter alia, their testimony was conclusory and therefore constituted no evidence.

"[C]onclusory testimony cannot support a judgment because it is considered no evidence." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 222–23 (Tex. 2019) (internal quotations omitted). "[A]lthough expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness.'" *Gen. Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470–71 (Tex. 2005) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). A witness's affidavit is conclusory if he offers nothing more than unexplained conclusions or opinions by failing to specify the facts on which his conclusions or opinions rest. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008); *Brookshire Katy Drainage Dist. v. Lily Gardens*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Rather, the expert must link his conclusions to the facts, explaining the basis of his assertions. *Bombardier Aerospace*, 572 S.W.3d at 223.

Appellees assert that appellants failed to preserve this point. However, "[a] party may challenge an expert's testimony as conclusory, making a no-evidence challenge, even when the party did not object to its admissibility at trial." *Id.*

In determining whether Brantley's and Dill's affidavits are conclusory, and therefore constitute no evidence, we consider their affidavit testimony in the light

most favorable to the trial court's judgment, indulging every reasonable inference in support. *See id.*

In his affidavit, Brantley testified that he has been a licensed attorney in Texas since 1985. He is board certified in personal injury trial law and a partner at West, Webb, Albritton & Gentry, P.C. ("WWAG"), in Brazos County, Texas. His practice includes Grimes County, he has prosecuted and defended TCPA cases, and he is familiar with rates and fees for such cases in Grimes County. He testified that, based on his review of Calzada's affidavits and attached billing invoices, he concluded that the materials were "insufficient to support a finding of reasonable attorney's fees because [they] lack specificity to determine the work performed and how much time the work required." Specifically, the billing invoices were "heavily redacted" and thus it was "virtually impossible" for the trial court to ascertain "what services were performed, for whom, and for what." In addition, the fees and expenses sought were "unreasonable" and "in excess of the fee customarily charged in Grimes County for similar legal services." That is, he asserted that the fees were simply too high.

The record does not support that the invoices are so "heavily redacted" that it was "virtually impossible" for the trial court to ascertain "what services were performed, for whom, and for what." Rather, as discussed above, appellants' evidence demonstrated the services performed, who performed the services, when the services were performed, the reasonable amount of time required to perform the

services, and the reasonable hourly rate for each person performing such services. And, Brantley simply asserted that the fees were too high. An affidavit filed by non-movant's counsel that simply criticizes the fees sought by the movant as unreasonable without setting forth the basis for his opinion, as here, is conclusory. *See Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 126 (Tex. App.—Fort Worth 2003, pet. denied); *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373–74 (Tex. App.—San Antonio 1999, pet. denied). Thus, Brantley's affidavit constitutes no evidence. *See Bombardier Aerospace*, 572 S.W.3d at 222–23.

Dill, in his affidavit, testified that he has been a licensed attorney in Texas since 1992. He is an attorney at WWAG, practices in Grimes County, has "handled civil matters," and "has reviewed fee bills from other attorneys and firms practicing law in Grimes County." He testified, based on his review of the affidavits of Calzada and Brantley, that he found Calzada's "claims in her affidavits that her clients are entitled to recovery of $54,643.69. . . to be neither reasonable nor necessary." Rather, "it appear[ed] that a reasonable and necessary fee on behalf of Ms. Calzada's clients would be $9,000.00," in total. Dill testified that the "rates are too high and extraneous work was performed." Specifically, a rate of $250 per hour for an attorney in Grimes County with 7 years of experience is "too high." He asserted that, "[g]iven Ms. Calzada's apparent mastery of Chapter 27, she should have known

that, in the lawsuit at hand, all she had to do was file an answer and immediately move for summary judgment." Further, he asserted, Calzada performed work that was "largely unnecessary, as her own fee bills state that opposing counsel contacted her" after she filed the interlocutory appeal and stated that no appellees' brief would be filed. He asserted that such "conceded defeat" and "thus end[ed] the dispute."

Because Dill offered no factual basis for his opinion that the fees appellants sought were unreasonable and "too high" and that a reasonable fee "would be $9,000.00," his opinion is conclusory. *See Obregon*, 2 S.W.3d at 374 (holding affidavit in which affiant failed to set forth basis for his opinion as to what reasonable fee would be was conclusory). Although Dill testified that Calzada performed "extraneous work," he seemed to confuse TCPA motions to dismiss with summary-judgment practice. *See Gascamp v. WSP USA, Inc.*, 596 S.W.3d 457, 467–68 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) ("While a motion to dismiss under the TCPA constitutes a claim for affirmative relief, a motion for summary judgment does not."). He incorrectly noted that a TCPA motion to dismiss does not require a hearing. *See* TEX. CIV. PRAC. & REM. CODE § 27.004 (requiring hearing). And, he seemed to confuse electing not to file an appellee's brief with "ending" this dispute, despite the outstanding mandatory statutory attorney's fees, costs, expenses, and sanctions issues. *See id.* § 27.009 (providing that trial court "shall award" movant

26

court costs, reasonable attorney's fees, and other expenses incurred, along with sanctions to deter party who brought legal action from bringing similar actions).

We conclude that Brantley's and Dill's affidavits are conclusory and therefore do not constitute evidence to overcome the presumptive reasonableness of the base lodestar calculation. *See Rohrmoos Venture*, 578 S.W.3d at 501.

The Texas Supreme Court has noted, however, that even if a fee claimant's testimony is uncontroverted, a trial court is not obligated to award the requested amount. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547–48 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). Attorney's fees may be proven as a matter of law in some cases by uncontroverted expert testimony if it is (1) readily controvertible if untrue; (2) clear, direct, and positive; and (3) uncontradicted by the "attendant circumstances." *Ragsdale*, 801 S.W.3d at 882. Such attendant circumstances may indicate that the claimed attorney's fees are unreasonable or incredible. *Id*.

Texas law requires that the recovery of attorney's fees be reasonable under the particular circumstances of the case and that it bear some reasonable relationship to the amount in controversy. *USAA Cty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 103 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Arthur Andersen & Co.*, 945 S.W.2d at 818 (considering amount in controversy); *Wayland*, 711 S.W.2d at 233 ("One of the factors in determining the reasonableness of attorney's fees is the

amount of damages awarded."). A factfinder must consider the amount of money involved. *Patrick W.Y. Tam Trust*, 296 S.W.3d at 548. "When determining an appropriate fee award, the trial court is entitled to examine the entire record and to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge." *Land v. Land*, 561 S.W.3d 624, 639 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (internal quotations omitted); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Here, the record shows that Martindale and Hurst sought "less than $100,000.00 including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees." However, appellants sought $73,605.12 in attorney's fees and costs.[11] Thus, the trial court could have reasonably applied some reduction to the attorney's fee awards based on this consideration. *See Rohrmoos Venture*, 578 S.W.3d at 498–500. This is, however, only one factor in the analysis. *See Cook*, 241 S.W.3d at 103.

---

[11] Appellants presented evidence that the fees attributable solely to defending against Martindale's claims totaled $10,832.50, the fees attributable solely to defending against Hurst's claims totaled $9,430.43, and the fees for work that was not reasonably segregable, and for which Martindale and Hurst were jointly and severally liable, totaled $50,071.00. Appellants also presented evidence that their costs and expenses, including expert fees, totaled $3,271.19.

In sum, the version of the TCPA applicable to this case requires a trial court that orders dismissal of a legal action, as here, to award the movants "reasonable attorney's fees . . . incurred in defending against the legal action." *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). A "reasonable" attorney's fee is "one that is not excessive or extreme, but rather moderate or fair." *Sullivan*, 488 S.W.3d at 299. Because appellants supported the base lodestar calculation with sufficient evidence, there is a "strong presumption" that it reflects the reasonable attorney's fees that can be shifted to appellees in this case. *See Rohrmoos Venture*, 578 S.W.3d at 499. And, appellees' affidavits do not constitute evidence to overcome the presumptive reasonableness of the base lodestar figure. *See id.* at 501. Even when a fee claimant's testimony is uncontroverted, a trial court is not obligated to award the requested amount. *Smith*, 296 S.W.3d at 547–48; *see Rohrmoos Venture*, 578 S.W.3d at 502 ("The lodestar method was never intended to be conclusive in all circumstances[.]"). However, it is in "rare circumstances," in which the lodestar method "does not adequately take into account a factor that may properly be considered in determining a reasonable fee," that the presumption may be overcome. *Rohrmoos Venture*, 578 S.W.3d at 502; *see Johari v. Ayva Ctr. LLC*, No. 14-17-00912-CV, 2020 WL 897385, at *2 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, no pet.) (mem. op.) (noting that "exceptional circumstances" justify reductions to base lodestar figure).

29

The record shows that this case began in 2017, and appellants immediately moved for dismissal. They have since spent 4 years disposing of the claims against them and recovering mandatory statutory attorney's fees. The trial court's award to them of "attorney's fees, court costs and expenses" of $9,000 against Martindale and $7,000 against Hurst represents (less appellants' evidence of costs incurred) just 17% of appellants' evidence of attorney's fees incurred. That is, their award was reduced to approximately $1,600 in attorney's fees per appellant, per year.

Although we recognize that appellants were not necessarily entitled to recover all of their requested attorney's fees, *see Ragsdale*, 801 S.W.2d at 882, they were entitled to their reasonable attorney's fees incurred. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1).

We conclude that the trial court's award of trial attorney's fees is arbitrary, unreasonable, and without reference to guiding principles, because it bears no relationship to the uncontroverted evidence of attorney's fees incurred. *See Goode*, 943 S.W.2d at 446; *Urquhart v. Calkins*, No. 01-17-00256-CV, 2018 WL 3352919, at *4 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. denied) (mem. op.); *see, e.g.*, *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *7–8, 19 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (mem. op.) (holding award of 22% of requested attorney's fees was against great weight and preponderance of evidence, and thus constituted abuse of discretion, and remanding for

redetermination); *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at \*18 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) (holding trial court abused its discretion in awarding only 5% of attorney's fees incurred); *cf. Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at \*15 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (holding award of 85% of attorney's fees incurred was neither arbitrary nor unreasonable).

Further, appellants argue that the trial court erred in not awarding trial court costs[12] and expenses because such awards are mandatory under the TCPA. When a trial court dismisses a claim pursuant to the TCPA, it is also required to award costs and expenses incurred.[13] TEX. CIV. PRAC. & REM. CODE § 27.009. Here, as discussed above, appellants presented uncontroverted evidence of costs and expenses incurred, including expert fees of $1,312.50, totaling $3,271.19. The trial court's final judgment, which combines "attorney's fees, court costs, and expenses," does not specify the amount of costs and expenses, if any, that it actually awarded. *See Urquhart*, 2018 WL 3352919, at \*5.

---

[12] Appellants also argue that the trial court "violated this Court's mandate by not awarding appellate costs in the first appeal." The record shows that this Court, in its mandate, ordered that Hurst and Martindale, "jointly and severally, pay all appellate costs." Nothing in this Court's mandate directed the trial court to award appellate costs.

[13] Appellants do not challenge the trial court's award of sanctions. *See* TEX. CIV. PRAC. & REM. CODE § 27.009.

Accordingly, we hold that the trial court erred in awarding attorney's fees. costs, and expenses. Although appellants urge this Court to render an award of attorney's fees, costs, and expenses, we conclude that these issues should be remanded for a redetermination. *See Sullivan*, 488 S.W.3d at 299 (remanding TCPA attorney's fees issue, noting that "reasonable" attorney's fee is one that is "fair and moderate" and that determination thereof rests within trial court's sound discretion); *see, e.g.*, *Serafine v. Blunt*, No. 03-16-00131-CV, 2017 WL 2224528, at *7 (Tex. App.—Austin May 19, 2017, pet. denied) (mem. op.) (declining to render award of TCPA attorney's fees and concluding that proper disposition was to remand for redetermination).

We sustain appellants' first and second issues.

3. *Appellate Attorney's Fees*

In their third issue, appellants assert that the trial court erred in failing to award them the full amount of their requested appellate attorney's fees because these amounts were uncontroverted.

When, as here, trial attorney's fees are mandatory under statute, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *See Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015). And, a prevailing party in the trial court may recover appellate attorney's fees as a successful appellant. *Id.* at 155. However, a party cannot complain on appeal that a trial court took a specific

action that the complaining party requested. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005).

The record shows that Calzada testified in her affidavit that, based on her prior experience working on appeals of this nature, "the following amounts should be awarded should an appeal of this Court's ruling *be undertaken by either Plaintiff successfully*":

 a. In the event of an appeal to the Court of Appeals requiring briefing: an additional $40,000.00;

 b. In the event of oral argument in the Court of Appeals: an additional $15,000.00;

 c. In the event of a Petition for Review to the Texas Supreme Court: an additional $20,000.00;

 d. In the events of merits briefing to the Texas Supreme Court: an additional $40,000.00; and

 e. In the event of oral argument in the Texas Supreme Court: an additional $20,000.00.

(Emphasis added.)

Accordingly, the trial court ordered that "the following conditional attorney's fees . . . be awarded to [Trice] should an unsuccessful appeal of the Court's ruling *be undertaken by Plaintiff*":

 a. In the event of an appeal to the Court of Appeals requiring briefing: an additional $3,000.00;

 b. In the event of oral argument in the Court of Appeals: an additional $1,500.00;

 c. In the event of a Petition for Review to the Texas Supreme Court: an additional $3,000.00;

d.  In the events of merits briefing to the Texas Supreme Court: an additional $2,500.00; and

e.  In the event of oral argument in the Texas Supreme Court: an additional $1,500.00.

(Emphasis added.)

Thus, based on appellants' request and evidence in support, the trial court awarded appellate attorney's fees only with respect to an appeal by Hurst or Martindale, and not with respect to an appeal by appellants. Because appellants invited the issue of which they now complain, any error by the trial court in awarding appellate attorney's fees is waived. *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 785 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A party fails to preserve error . . . when that party waives, or invites, the alleged error. . . .").

We overrule appellants' third issue.

**Conclusion**

We reverse only the portion of the trial court's judgment awarding appellants "attorney's fees, court costs and expenses" against Martindale in the amount of $9,000.00 and against Hurst in the amount of $7,000.00. We remand these issues to the trial court for a redetermination of reasonable attorney's fees, costs, and expenses consistent with this opinion.[14] Redetermination of these matters will be based upon the evidence provided to the trial court by the litigants prior to the entry of its final

---

[14] *See Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014).

judgment signed on June 25, 2019. The trial court may also award appellants reasonable attorney's fees, costs, and expenses incurred during the current remand and evidence may be taken on those issues.[15] We affirm the trial court's judgment in all other respects.

                              Sherry Radack
                              Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Goodman, J., dissenting.

---

[15]    *See Sullivan v. Abraham*, No. 07-17-00125-CV, 2018 WL 845615, at *10 (Tex. App.
        —Amarillo Feb. 13, 2018, no pet.) (mem. op.).